FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2015 FEB 23  A 8: 56

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

FHM INSURANCE COMPANY, a
Florida corporation,

      Plaintiff,

v.

  Case No. 3:15-CV-198-J-32JRK
  Lower Court Case No. 16-2014-CA-8328

TIG INSURANCE COMPANY, f/k/a
TRANSAMERICA INSURANCE
COMPANY, a foreign corporation,

      Defendant.

_____/

### DEFENDANT'S NOTICE OF REMOVAL

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. §1332, 28 U.S.C. §1441, and 28

U.S.C. §1446, Defendant, TIG Insurance Company,  by and through its undersigned counsel,

hereby files this Notice of Removal to the United States District Court for the Middle District of

Florida, from the Circuit Court in and for Duval County, Florida, the case styled *FHM Insurance*

*Company v. TIG Insurance Company, f/k/a Transamerica Insurance Company*, Case No. 16-

2014-CA-8328.  As grounds for the removal, the Defendant states the following:

1.     Removal is appropriate based on diversity jurisdiction. 28 U.S.C. §1441(b).  As

will be discussed in more detail below, the state of citizenship of Plaintiff differs from the state

of citizenship for Defendant (i.e. there is complete diversity), and the amount in controversy

exceeds the required threshold for diversity jurisdiction.

2.     The Register of Actions for the Circuit Court of the Fourth Judicial Circuit, in and

for Duval County, Florida shows that, with the exception of this state court removal notice, the

documents on file in the state court are now on file with this Court. *See* Exhibit B for a copy of

the State Court Register of Action for the state court matter. In addition to the Amended Complaint attached hereto as Exhibit A, a copy of all other pleadings, orders, and exhibits on file in the state court action are attached as Composite Exhibit C.

3.     Federal district courts have jurisdiction of all civil actions where the matter in controversy exceeds the sum of value of $75,000.00, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. §1332(a)(1).

4.     Plaintiff's Amended Complaint seeks damages from Defendant in excess of $75,000.00. See Para. 17 of the Amended Complaint, in which Plaintiff alleges: "TIG currently owes FHM in excess of $350,000.00."

5.     Since the jurisdictional limit for federal court jurisdiction has been met, the only remaining issue is diversity of citizenship between the Plaintiff and the Defendant. See 28 U.S.C. §1332(a); 28 U.S.C. §1441(a); and 28 U.S.C. §1441(b)(2). There are rules for determining the citizenship of the subject parties, based on the type of business entity of which they consist.

6.     A corporation shall be deemed to be a citizen of any state by which it has been incorporated and of the state where it has its principal place of business. 28 U.S.C. §1332(c)(1).

7.     Plaintiff is a citizen of Florida for purposes of diversity jurisdiction. See Exhibit "A."

8.     Defendant is a citizen of California and New Hampshire for purposes of diversity jurisdiction. As a corporation, Defendant's citizenship is based on the location of incorporation and the location of its principal place of business. Defendant was incorporated in California. Defendant's principal place of business is Manchester, NH. See Exhibit "D," Affidavit of Bryce Larrabee.

9.     Therefore, complete diversity of citizenship exists in this case.  The Plaintiff is a citizen of Florida and the Defendant is citizen of California and New Hampshire.  Accordingly, pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1441, the parties are diverse for purposes of federal court jurisdiction.

10.     Since there is complete diversity of citizenship between the parties, the amount in controversy exceeds the jurisdictional threshold, and all elements of diversity jurisdiction are satisfied, this litigation is both appropriate and proper in the United States District Court, for which this removal has been filed.

11.     Without waiving any arguments regarding insufficiency of service of process, Defendant received the subject complaint on or after January 22, 2015.  See Notice of Service of Process, attached hereto as Composite Exhibit "C."  The Defendant received notice less than thirty (30) days prior to the filing of this Notice of Removal.  This Notice of Removal is therefore timely filed.  28 U.S.C. §1446(b).  The Defendant shall cause to be filed a copy of this Notice of Removal with the Circuit Court in and for Duval County, Florida, in compliance with 28 U.S.C. §1446(d).

12.     Under 28 U.S.C. § 1441(a), the United States District Court for the Middle District of Florida is a proper venue for removal because the State Court where this action is pending, the Fourth Judicial Circuit in and for Duval County, Florida, is within the Middle District of Florida.

13.     Defendant is the only defendant named in this action.  Consequently consent to this removal by another entity is not an issue.

WHEREFORE, Defendant TIG Insurance Company hereby petitions for removal of this action from the Circuit Court in and for Duval County, Florida to the United States District Court for the Middle District of Florida, and requests waiver of any bond requirement.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 20, 2015, I forwarded via FEDEX the foregoing to the Clerk of the Court and forwarded via e-mail a copy of the foregoing to the following:

Frederick D. Page, Esquire
Holland & Knight, LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
fpage@hklaw.com
Attorney for Plaintiff

Brian W. Bennett, Esquire
Florida Bar No. 0104256
Primary:  bbennett@floridalawonline.com
Secondary:  bdillon@floridalawonline.com
PAGE, EICHENBLATT & BENNETT, P.A.
214 East Lucerne Circle
Orlando, Florida 32801
407-386-1900
407-209-1006 (fax)
Attorneys for Defendant

E

X

H

I

B

I

T


1

# SPECIFIC EXCESS WORKERS' COMPENSATION POLICY

### TRANSAMERICA INSURANCE COMPANY
(A Stock Company, herein called the "Company")
6300 Canoga Avenue, Woodland Hills, California  91367

### WEXFORD UNDERWRITING MANAGERS, INC.
260 California Street, Suite 900, San Francisco, CA  94111

POLICY NUMBER:  W - 141739

## DECLARATIONS

**ITEM 1** – Name and Address of Insured:  Florida Hotel-Motel Self Insurers Fund
P. O. Box 3145
St. Augustine, Florida  32085-3145

**ITEM 2** – Effective Date:  January 1, 1990                    Expiration Date:  January 1, 1991
12:01 A.M., standard time at the address of the Insured as stated herein.
Cancellation Notice:  60 Days

**ITEM 3** – Coverage under this Policy applies to the Workers' Compensation Act of each of the following states:
Florida

**ITEM 4** – Company's Limit of Indemnity Each Occurrence:
(a) For Workers' Compensation:                              $20,000,000
(b) For Employer's Liability:  See Endorsement #2           $ 1,000,000
(c) For Workers' Compensation & Employer's Liability Combined:  $20,000,000

**ITEM 5** – Insured's Retention Each Occurrence:      $375,000

**ITEM 6** – Business Operations of Insured

| CLASSIFICATION OF OPERATIONS | CODE NO. | ESTIMATED ANNUAL REMUNERATION | RATE PER $100 REMUNERATION | ESTIMATED STANDARD PREMIUM |
|---|---|---|---|---|
| All Operations See Endorsement #6 | — | ▩ | | — |

Total Estimated Earned Normal Premium: ▩

**ITEM 7** – Policy Premium: ▩                    Advance Premium for this Policy: ▩
▩ % of Earned Normal Premium
See Endorsement #6

**ITEM 8** – Minimum Premium for this Policy: ▩

**ITEM 9** – Endorsements forming part of Policy at time of issue: WTA-01, WTA-30, WTA-09, WTA-11, WTA-14A, WTA-23, WTA-34, WTA-106A

The declarations shall not be binding on the Company unless countersigned by a duly authorized representative of the Company.
Dated at ___WINTER PARK, FLA.___ this _29TH_ day of _JAN_, 1990

By _____
(Authorized Representative)

Producer's Name:    MacDuff Underwriters, Inc.                    Producer's Code:   WP - 0047

TAW - 01 (1-89)

GU 269
(11-85)

IL 09 17 11 85
## RESIDENT AGENT COUNTERSIGNATURE ENDORSEMENT

Policy Number: <u>W-141739</u>

Company: <u>TRANSAMERICA INSURANCE COMPANY</u>

Named Insured: <u>FLORIDA HOTEL-MOTEL SELF INSURERS FUND</u>

| State | Premium |
|-------|---------|
| FLORIDA | ▮ |

The signature shown on this endorsement complies with the countersignature laws and regulations of the State shown.

Date of Countersignature <u>1-24-90</u>
(month, day and year)



_____
Licensed Resident Agent

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

8/11/2010 11:16

Endorsement No. ___1___

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED     FLORIDA HOTEL-MOTEL SELF INSURERS FUND

Policy No. ___W-141739___                    Endorsement Effective ___JANUARY 1, 1990___
                                                                    (12.01 A.M.)

                                Countersigned _____
                                                          (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

ADVANCE PREMIUM INSTALLMENT ENDORSEMENT

This Policy is changed to provide:

Item 7 of the Declarations, Advance Premium for this policy, will be payable as follows for the period January 1, 1990 to January 1, 1991:

| DUE DATE | AMOUNT PAYABLE |
|----------|----------------|
| January 1, 1990 | ████████ |
| July 1, 1990 | ████████ |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-01 (1/88)

Endorsement No. _____1_____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. _____W-141789_____          Endorsement Effective _____JANUARY 1, 1990_____
                                                                   (12:01 A.M.)

                                          Countersigned _____
                                                         (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

## EMPLOYERS LIABILITY LIMITATION ENDORSEMENT

This Policy is changed to provide:

Notwithstanding anything in the Policy to the contrary, when this Endorsement is used, the Company's liability under this portion of Part 2, Coverage, of the Policy which is entitled, "Employers Liability Indemnity Coverage," shall be subject to the following per occurrence limitations. The Company's maximum limit of liability thereunder for loss arising out of any occurrence shall not exceed:

$1,000,000 Each Occurrence ✓

In excess of the Insured's retention set forth in Item 5 of the Declarations applicable to each occurrence.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-82 (1/89)

Endorsement No. _____ 3 _____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____          Endorsement Effective _____ JANUARY 1, 1990 _____
                                                                 (12:01 A.M.)

                                Countersigned _____
                                                         (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

_____

JONES ACT EXCLUSION ENDORSEMENT

This Policy is changed to provide:

This policy excludes all liability under the Merchant Marine Act of 1920, known as the Jones Act, (46 U.S. Code, Section 688, 1970), and any amendment to that Act that is in effect during the period this policy is in force.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-00 (1/89)

8/11/2010 11:16

Endorsement No. _____4_____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED_____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. _____W-141759_____          Endorsement Effective____JANUARY 1, 1990_____
                                                                    (12:01 A.M.)

                                  Countersigned_____
                                                                    (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

LONGSHOREMEN'S AND HARBOR WORKERS
COMPENSATION EXCLUSION ENDORSEMENT

This Policy is changed to provide:

This policy excludes all liability under the United States Longshoremen's and Harbor Workers Act (33 U.S.C. Sections 901-950), and any amendment to that Act that is in effect during the period this policy is in effect.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-11 (1/89)

Endorsement No. _____ 5 _____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ **FLORIDA HOTEL-MOTEL SELF INSURERS FUND** _____

Policy No. _____ **W-141739** _____        Endorsement Effective _____ **JANUARY 1, 1990** _____

(12:01 A.M.)

Countersigned _____

(Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

## AIRCRAFT EXCLUSION ENDORSEMENT

This Policy is changed to provide:

This policy excludes bodily injury by accident or bodily injury by disease, including resulting death, sustained by any employee of the Insured while entering into, alighting from or riding in any aircraft owned, leased or chartered by the Insured or operated by employees of the Insured.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-14A (1/89)

Endorsement No. _____ 6 _____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____          Endorsement Effective _____ JANUARY 1, 1990 _____
                                                                          (12:01 A.M.)

Countersigned _____
                                              (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

## ASSOCIATION ENDORSEMENT

This Policy is changed to provide:

A) Item 1, of the Declarations shall read as follows:

   1. Insured:      Florida Hotel-Motel Self Insurers Fund
                    P. O. Box 3145
                    St. Augustine, Florida 32085-3145

   It is agreed that the insurance afforded by this policy shall apply to any member which joins the Florida Hotel-Motel Self Insurers Fund in strict compliance with the Fund's bylaws during the contract period. All provisions of this policy shall apply separately to each member named herein except that:

   a) The Retentions and Limits specified in Items 4 and 5 of the Declarations shall apply jointly to all such members as a group.

B) Item 6 of the Declarations shall read as follows:

   a) Premium Rate: ▓▓% of Earned Normal Premium. Earned Normal Premium is defined as the rate times the payroll times the experience mod, less a 15% filed fund discount.

   a1) Estimated Earned Normal Premium: ▓▓▓▓▓▓

C) Furthermore, coverage is additionally restricted to the following NCCI Code Classifications, which were provided with the submission, and on which our acceptance of this Fund was made.

| CODE | CLASSIFICATION |
|------|----------------|
| 0008 | Farms |
| 0042 | Landscaping |
| 0083 | Farm-Cattle or Livestock Raising NOC & Drivers |
| 2003 | Bakery & Drivers |
| 2585 | Laundry NOC & Route Supervisors, Drivers |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-23 (1/89)

Endorsement No. ___6 (Cont.)___

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy.)

INSURED___ FLORIDA HOTEL-MOTEL SELF INSURERS FUND

Policy No. ___W-141739___                          Endorsement Effective___ JANUARY 1, 1990___
                                                                              (12:01 A M )

                                    Countersigned_____
                                                              (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

| Code | Description |
|------|-------------|
| 2589 | Laundry & Dry Cleaning Store-Retail |
| 4361 | Photo-All Employees & Clerical, Sales, Drivers |
| 5022 | Masonry |
| 5192 | Vending or Coin Operated Machines Installation, Service or Repair |
| 5348 | Tile, Stone, Mosaic-Interior Only |
| 5403 | Carpentry NOC |
| 5437 | Carpentry Installation of Cabinet Work or Interior Trim |
| 5474 | Painting & Decorating |
| 5606 | Contractor Executive Supervisors |
| 5610 | Cleaners-Removal of Debris |
| 5645 | Carpentry-One Story Dwellings |
| 6836 | Marina Operations & Drivers |
| 7301 | Livery or Boarding Stable & Drivers |
| 7380 | Chauffeurs & Helpers |
| 7382 | Automobile, Bus, Taxi Operations-All Other |
| 7520 | Waterworks Operations & Drivers |
| 7605 | Burglar Alarm Installation |
| 7720 | Police Officers & Drivers |
| 8006 | Grocery Store-Retail |
| 8008 | Store Dry Goods-Retail |
| 8017 | Store Risk-Retail NOC |
| 8018 | Store-Wholesale |
| 8021 | Meat, Fish or Poultry Dealer-Wholesale |
| 8031 | Store-Meat, Fish or Poultry-Retail |
| 8033 | Store-Meat, Grocery & Provision-Retail |
| 8380 | Auto Repair, Parts, Accessory |
| 8381 | Gasoline Station-Retail |
| 8385 | Bus Co., Garage Employees, School Bus Contractor |
| 8742 | Salesmen |
| 8748 | Automobile Sales or Service Agencies |
| 8810 | Clerical |
| 8820 | Attorney |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-25 (1/89)

Endorsement No _____ 6 (Cont.)

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND

Policy No. _____ W-141729 _____

Endorsement Effective _____ JANUARY 1, 1990

(12:01 A M )

Countersigned _____

(Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

| | |
|---|---|
| 8829 | Convalescent Home |
| 9015 | Buildings |
| 9016 | Amusement Park or Exhibition |
| 9047 | Nursing Home-All Employees |
| 9052 | Hotel-All Employees, Salespersons, & Drivers |
| 9058 | Hotel Restaurant Employees |
| 9060 | Country Club |
| 9061 | Clubs NOC |
| 9063 | YMCA and YWCA |
| 9079 | Restaurant NOC |
| 9154 | Theater, All Other Employees |
| 9156 | Theater Players, Entertainers, or, Musicians |
| 9180 | Amusement Device Operation NOC |
| 9586 | Barber Shop or Beauty Parlor |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-28 (1/89)

8/11/2010 11·16

Endorsement No. _____ 7 _____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-143789 _____            Endorsement Effective _____ JANUARY 1, 1990 _____
                                                                                        (12:01 A.M.)

                                          Countersigned _____
                                                                           (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

_____

P.E.L.A. EXCLUSION ENDORSEMENT

This Policy is changed to provide:

This Policy excludes all liability under the Federal Employers Liability Act, known as F.E.L.A., and any amendment to that Act that is in effect during the period this policy is in force.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-34 (1/89)

Endorsement No. _____ 8 _____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____        Endorsement Effective _____ JANUARY 1, 1990

(12.01 A.M.)

Countersigned _____

(Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

## FLORIDA CANCELLATION ENDORSEMENT

This Policy is changed to provide:

Part 16, Cancellation, is amended as follows:

A.  The Insured may cancel this policy at any time by giving at least 60 days written notice of it's intent by certified mail to the Company and to the

Florida Department of Labor and Employment Security
Division of Worker's Compensation
Bureau of Worker's Compensation Self-Insurance
3738 Centerview Drive
Suite 239, Forrest Building
Tallahassee, Florida 33399-0666

B.  If this policy is cancelled or nonrenewed by the Company, at least 60 days written notice of it's intent will be given by certified mail to the Insured and to the

Florida Department of Labor and Employment Security
Division of Worker's Compensation
Bureau of Worker's Compensation Self-Insurance
3738 Centerview Drive
Suite 239, Forrest Building
Tallahassee, Florida 33399-0666

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-106A (1/59)

8/11/2010 11:16

Endorsement No. ___ 33

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED ___ FLORIDA HOTEL-MOTEL SELF INSURERS FUND

Policy No. ___ W-141759                          Endorsement Effective___ JANUARY 1, 1990
                                                                          (12.01 A.M.)

                                    Countersigned_____
                                                              (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

FLORIDA AMENDATORY ENDORSEMENT

This Policy is changed to provide:

Upon the direction of the Florida Division of Workers Compensation, the Company will pay all monies due under the terms and conditions of this Policy directly to the claimant or such other party as the Division may appoint.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-106B (3/93)

Endorsement No. __23__

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED   FLORIDA HOTEL-MOTEL SELF INSURERS FUND

Policy No. __W-141739__                    Endorsement Effective __JANUARY 1, 1990__
                                                              (12:01 A.M.)

                              Countersigned_____
                                                    . (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

Endorsement No. 22, FLORIDA AMENDATORY ENDORSEMENT, is deleted in its entirety and replaced with the following:

FLORIDA AMENDATORY ENDORSEMENT

This Policy is changed to provide:

Upon the direction of the Florida Division of Workers Compensation, the Company will pay all monies due under the terms and conditions of this Policy directly to the claimant or such other party as the Division may appoint.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-106B (2/92)

8/11/2010 11:16

Endorsement No._____9_____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED_____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. _____W-141739_____          Endorsement Effective ____JANUARY 22, 1990___
                                                            (11:01 A.M.)

                                        Countersigned _____
                                                            (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

_____

                    DECLARATIONS AMENDATORY ENDORSEMENT


This Policy is changed to provide:

ITEM 1 of the Declarations, Name and Address of Insured, is amended to read:

            Florida Hotel-Motel Self Insurers Fund
            9455 Regency Square Boulevard
            Suite 415
            Jacksonville, Florida  32225


This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-52 (8/90)

# SPECIFIC EXCESS WORKERS COMPENSATION
## AND EMPLOYERS LIABILITY POLICY

In consideration of the payment of the premium, in reliance upon the statements in this Declarations made part of this Policy and subject to its terms, the Company named in the Declarations agrees with the Insured also named in the Declarations (herein called the Insured) as follows:

## PART 1. COVERAGE

Self-Insured Indemnity Coverage. The Company will indemnify the Insured for loss resulting from an occurrence during the contract period provided either:

(1) such loss would be covered under the Insured's qualified self-insured retention plan in those states named in Item 3 of the Declarations or;

(2) such loss would be compensable under the Workers Compensation Act of any state for employees injured who are normally employed in a state named in Item 3 of the Declarations and then only for that portion of loss, not exceeding the benefits in the state in which the injured employees are normally employed.

However, if the Insured is subject to the Workers Compensation Act when not a duly qualified self-insurer for a loss that would otherwise be covered by this Agreement, the Company will indemnify the Insured for such loss not exceeding the amount which would have been paid had the Insured been a duly qualified self-insurer.

Employers Liability Indemnity Coverage. The Company will indemnify the Insured for loss resulting from an occurrence during the contract period on account of the Insured's liability for damages because of bodily injury or occupational disease sustained by employees normally employed in a state named in Item 3 of the Declarations. This Agreement shall not indemnify the Insured for loss:

(1) for any amount exceeding that which the Insured would have sustained had the Insured not rejected the Workers Compensation Act of any state named in Item 3 of the Declarations, or any part of such act, or

(2) resulting from damages imposed in any lawsuit brought in, or any judgement rendered by any court outside the United States of America, its territories or possessions, or Canada, or to any action on such judgements, wherever brought.

## PART 2. RETENTION AND LIMIT OF INDEMNITY

No indemnity shall be afforded under this Policy, unless and until the Insured shall first sustain loss as a result of each occurrence in excess of the amount of the Retention stated in Item 5 for the types of coverage involved of the Declarations. The Company hereby agrees to indemnify the Insured against loss as a result of each occurrence in excess of such Retention, subject to

the Limit of Indemnity provided for in Item 4 for the types of coverage involved of the Declarations.

The Company shall indemnify the Insured for claim expenses for loss in excess of the Retention in the same proportion as the amount of the loss paid by the Company in excess of the Retention bears to the total amount of such loss.

## PART 3. EXCLUSIONS

This Policy shall not apply to:

(A) punitive or exemplary damages, fines or penalties assessed against or imposed upon the Insured:

(1) on account of bodily injury or occupational disease sustained by any employee; or

(2) because of the conduct of the Insured or any of its agents (a) in the investigation, trial or settlement of any claim for which coverage is afforded under Part 1 of the Agreement, or b)  in failing to pay or delaying the payment of any such benefits or damages; or

(3) on account of violation of any statute or regulation;

(B) loss arising out of any operation with respect to which the Insured carries primary workers compensation or Employers Liability Insurance coverage;

(C) under Employers Liability Indemnity Coverage in Part 1 of this Policy,

(1) liability assumed by the Insured under any contract or agreement, or

(2) any obligation for which the Insured or any carrier as his insurer may be held liable for any Workers Compensation, Unemployment Compensation or Disability benefits law, or under any similiar law.

## PART 4. DEFINITIONS

DEFINITIONS: THE TERM:

(a) "bodily injury" shall include death resulting therefrom, but shall not include occupational disease;

(b) "claim expense" shall mean court costs, interest upon awards and judgements, and investigation, adjustment and legal expenses that are actually paid by the Insured as respects loss. However, the term "claim expense" shall not include loss, salaries paid to employees of the Insured nor shall it include fees and retainers paid to the Insured's service organization;

(c) "employee" shall mean, any person performing work which renders the Insured liable under the Workers Compensation Act of a state named in Item 3 of the Declarations, or under the common law of any such state;

(d) "Insured's service organization" shall mean an agent of the Insured paid to service or administer the Insured's self-insured workers compensation and/or employers liability program;

(e) "loss" shall mean only such amounts as are actually paid by the Insured in payment of benefits under the applicable Workers Compensation Act, (or in settlement of its Employers Liability insured hereunder) in settlement of claims, or in satisfaction of awards or judgements. However, the term "loss" shall not include court costs, interest upon awards or judgement, investigation, adjustment and legal expenses, salaries paid to employees of the Insured, nor fees and retainers paid to the Insured's service organization;

(f) "occupational disease" shall include:   (1) death resulting therefrom.  (2) and cumulative injuries;

(g) "occurrence", as applied to bodily injury, shall mean "accident". Occupational disease sustained by each employee shall be deemed to be a separate occurrence and occurrence shall be deemed to take place on the date upon which the employee is last exposed at work to conditions allegedly causing such occupational disease;

(h) "remuneration" shall mean payroll developed in accordance with the rules set forth in the applicable Manual of Workers Compensation and Employers Liability Insurance;

(i) "standard premium" shall mean the premium computed by applying the agreed rates specified in Item 6 of the Declarations to the remuneration applicable in the states named in Item 3 of the Declarations;

(j) "state" shall mean any state of the United States of America and the District of Columbia;

(k) "statutory" shall mean loss in excess of any retention applicable to this Agreement;

(l) "Workers Compensation Act" shall include any separate occupational disease act, but shall not include the non-occupational disability benefit provisions of any such act.

PART 5. CONTRACT PERIODS

The term "normal contract period" shall mean the period of time between 12:01 AM on the effective date of this Policy, and 12:01 AM on the expiration date, as specified in the Declarations.

TAW - 02 (1/89)

The term "fractional contract period" applies only in case this Policy is cancelled effective at a date other than the end of the normal contract period, and shall mean that period of time between 12:01 AM on the effective date of this Agreement and 12:01 AM on the cancellation date of this Policy.

PART 6.  POLICY PREMIUM

As of the effective date stated in Item 2 of the Declarations, the Insured shall pay to the Company the Advance Premium specified in Item 7 of the Declarations, which Advance Premium shall be held for the Insured's account and shall be allowed as a credit against earned Policy Premium for the contract period.

Within 45 days after the end of the contract period, the Insured shall render to Wexford Underwriting Managers, Inc., a payroll report upon a form satisfactory to Wexford Underwriting Managers, Inc., showing by classification the amount of remuneration earned by employees during the contract period, plus computations of the standard premium and the earned Policy Premium for the contract period (the latter obtained by adjusting Policy Premium as specified in Item 7 of the Declarations).

The Insured shall pay to the Company the excess, if any, of the earned Policy Premium over the Advance Premium paid at the beginning of the contract period. If such Advance Premium exceeds such earned Policy Premium, the Company shall return to the Insured the amount of such excess, subject to the Minimum Premium applicable to the normal contract period, as specified in Item 8 of the Declarations.

In no event, however, shall the Policy Premium due the Company, in respect to the normal contract period be less than the applicable Minimum Premium specified in Item 8 of the Declarations.  The Policy Premium due the Company in respect of the fractional contract period resulting in case this Policy is cancelled effective at a date other than the end of a normal contract period shall be set forth in Part 14 of the Policy, Cancellation.

PART 7.  ADMINISTRATION AND REPORTING OF CLAIMS

The Insured shall be responsible for the investigation, settlement, defense or appeal of any claim made or suit brought, or proceeding instituted against the Insured and shall give immediate notice to Wexford Underwriting Managers, Inc., upon learning of any of the following:

(a) any claim, suit or proceeding that appears to involve indemnity by the Company;

(b) any occurrence, claim, award or proceeding judgement which exceeds 50% of the Retention stated in Item 6 of the Declarations;

(c) any occurrence which causes serious injury to two or more employees;

(d) any case involving:

    (1) amputation of a major extremity;

    (2) brain or spinal cord injury;

    (3) death;

    (4) disability for a period of nine months or more;

    (5) permanent total disability as defined in the Workers Compensation Act of the applicable state named in Item 5 of the Declarations;

    (6) any second or third degree burn of 25% or more of the body.

(e) the reopening of any case in which further award might involve liability of the Company.

The Insured shall make no voluntary settlement involving loss to the Company except with written consent of Wexford Underwriting Managers, Inc.

The Insured shall forward promptly to Wexford Underwriting Managers, Inc., any information it may request on the individual occurrences, claims or cases. The Insured shall render to Wexford Underwriting Managers, Inc., within 45 days of the end of the contract period an experience report, upon a form satisfactory to Wexford Underwriting Managers, Inc., showing in detail the amounts disbursed during the contract period in settling claims and the estimated future payments on, or reserves for, outstanding claims.

The Company, at its own election and expense and in addition to any indemnity for claim expenses provided by this Policy, shall have the right but not the duty to participate with the Insured in, or to assume in the name of the Insured control over, the investigation, settlement, defense or appeal of any claim, suit or proceeding which might involve liability of the Company.

PART 6.  LOSS PAYABLE

The company will indemnify the Insured for any loss for which it may be liable under this policy as follows:

(a) As respects PART 1, Coverage, Self Insurers Indemnity Coverage, payment shall first be made by the Insured for all benefits required of the Insured under Workers Compensation Law and the Company shall reimburse the Insured at monthly intervals after the Company has received proofs of payment by the Insured. Workers Compensation awards that may involve the Company may not be settled on a lump sum basis without prior written consent of the Company.

(b) As respects PART 1, Coverage, Employers Liability Indemnity Coverage, payment shall first be made by the Insured for damages for which the Insured is legally liable.  The Company will reimburse the Insured within 30 days after the Insurer has received proof of payment by the Insured.

TAW - 02 (1/89)

PART 9.  SUBROGATION AND SALVAGE

The Insured shall prosecute any and all claims it may have against any person, firm or corporation arising out of any occurrence resulting in the payment of loss and claim expenses. All recoveries therefrom shall be applied to reduce the loss and claim expenses to which this Policy applies, after deducting from such recoveries the expenses incurred in effecting such recoveries. If the Company shall have sustained a loss or claim expenses on account of such occurrence, such net amount of the recovery as does not exceed the Company's loss and claim expenses shall be paid to the Company.

If the Insured has such a claim against any person, firm or corporation, which it fails or neglects to pursue or enforce within the reasonable time, the Company shall be subrogated to such claim and the Insured shall execute any and all papers and documents necessary to vest full right, title and interest in the claim in the Company. The Company may prosecute the claim in its own name or in the name of the Insured. The Insured shall cooperate to the fullest extent with the Company in the enforcement of any such claim. The net proceeds derived from such claim shall first be used by the Company to pay its loss and claim expenses, and any excess shall be paid to the Insured."

PART 10.  AUDIT AND INSPECTION

The books and records of the Insured and the books and records of all agents and representatives of the Insured (including the Insured's service organization), as far as they relate to the subject matter of this Policy, shall be open to the Company and its representatives at all times during the usual business hours of the Insured and within three years after the contract period ends or within three years after the final settlement of all claims or payments made under this Policy.

The Company shall be permitted, but not obligated to inspect the Insured's properties, operations or workplaces at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such properties, operations or workplaces are safe, or healthful, or are in compliance with any code, law, rule or regulation.

PART 11.  OTHER INSURANCE

If any other excess insurance, reinsurance or indemnity exists protecting against loss or claim expenses covered by this Policy, the indemnity afforded by this Policy shall apply in excess of such other excess insurance, reinsurance or indemnity unless such other insurance, reinsurance or indemnity shall be arranged specifically to apply only in excess of this Policy.

**PART 12. ASSIGNMENT**

No assignment of the Insured's Interest hereunder shall be binding upon the Company.

**PART 13. NOTICE OR PAYMENT**

If more than one entity is named in Item 1 of the Declarations, notices, stipulations and payments to or by the entity first named in Item 1 shall be binding upon all other entities named therein.

**PART 14. CHANGE OR WAIVER**

The terms of this Policy shall not be waived or changed except by endorsement issued to form a part hereof, signed by a duly authorized representative of the Company.

**PART 15. CANCELLATION**

Either the Company or the Insured may cancel this Policy at any time by giving written notice by registered mail to the other party. Such notice shall provide at least the number of days cancellation notice set forth in Item 3 of the Declarations, stating when cancellation shall be effective. However, if cancellation notice is not set forth in Item 3 of the Declarations, cancellation notice shall not be less than 30 days or such greater time as may be required by state law. This Policy does not apply to loss and claim expenses as a result of occurrences taking place after the effective date of such cancellation.

This policy may also be cancelled by the Company for non-payment of any unpaid portion of the premium by giving written notice by registered mail to the Insured at the address shown in Item 1 of the Declarations, stating when, but not less than 10 days thereafter cancellation shall be effective.

If this Policy is cancelled prior to the expiration date stated in the Declarations, the Policy Premium for the fractional contract period shall be computed following the procedure set forth in Part 6 of this Policy, Policy Premium, except;

(a) if such cancellation is at the request of the Company, or at the request of the Insured when actually retiring from the business described in the application and specified in the Declarations, the Policy Premium shall be either the earned Policy Premium obtained by applying the adjustment specified in Item 7 of the Declarations to the standard premium for such fractional contract period, or the pro rata portion of the Minimum Premium for the normal contract period, as specified in Item 8 of the Declarations, whichever is greater;

(b) if such cancellation is at the request of the Insured, when not retiring as provided for above, the earned Policy Premium shall be either the earned Policy Premium obtained by applying the rates specified in Item 7 of the Declarations of the adjusted standard

premium for such fractional contract period and further adjusted in accordance with the customary short rate table and procedure or the short rate portion of the Minimum Premium for the normal contract period, as specified in Item 8 of the Declarations, whichever is greater.

Tender of earned or unearned Policy Premium by either party to this Policy shall not constitute a condition precedent to the effectiveness of cancellation as herein provided.

**PART 16. ACCEPTANCE**

By acceptance of this Policy the Insured agrees that the statements in the Declarations are the Insured's agreements and representations; that this Policy embodies all agreements existing between the Insured and the Company or any of its agents relating to this Policy; and that full compliance by the Insured with all the terms of this Policy is a condition precedent to the Company's liability hereunder.

In Witness Whereof, the Company has caused this Policy to be signed by its President and Secretary, but the Policy shall not be binding upon the Company until is the attached Declarations bearing the Policy Number is countersigned by a duly authorized representative of the Company.

**Transamerica Insurance Company**

_Herald G. Irons_
President

_Cli Nek_
Secretary

TAW - 02 (1/89)

Endorsement No. _____ 13 _____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____          Endorsement Effective _____ APRIL 15, 1991 _____
                                                              (12:01 A.M.)

Countersigned _____
                                    (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

## DECLARATIONS AMENDATORY ENDORSEMENT

This Policy is changed to provide:

ITEM 3 of the Declarations, Minimum Premium, is amended to read: ▮▮▮▮▮▮▮

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-82 (8/90)

Endorsement No. _____ 14 _____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED ____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. ___ W-141789 _____                    Endorsement Effective ____ JULY 1, 1991 _____
                                                                                         (12:01 A.M.)

                                        Countersigned ____ _Kenneth E. Hill_ _____
                                                                              (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

<u>DECLARATIONS AMENDATORY ENDORSEMENT</u>

This Policy is changed to provide:

ITEM 7 of the Declarations, Policy Premium, is amended to read: ▮ ▮▮ ▮ ✓

*deleted*
*fee unit #26*

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

Endorsement No. _____ 15 _____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____                  Endorsement Effective _____ JULY 1, 1991 _____
                                                                           (12:01 A.M.)

                                        Countersigned _____
                                                              (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

DECLARATIONS AMENDATORY ENDORSEMENT

In consideration of an additional premium of ███████ this Policy is changed to provide:

ITEM 1 of the Declarations, Name and Address of Insured, is amended to include:  Oakley Groves, Inc., Etal

ITEM 5 of the Declarations, Insured's Retention Each Occurrence, is amended to read:  $400,000 for Oakley Groves, Inc., Etal

ITEM 6 of the Declarations, Business Operations of Insured, is amended to read:

| CLASSIFICATION OF OPERATIONS | ESTIMATED ANNUAL REMUNERATION | ESTIMATED MANUAL PREMIUM |
|---|---|---|
| All Operations See Endorsements 6 & 14 | ██████ | ██████ |

ITEM 7 of the Declarations is amended to read:

███████ % of Manual Premium

███████ % of Manual Premium for Oakley Groves, Inc., Etal

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-57 (5/90)

"Revised"   Endorsement No. _____ 10 _____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W - 141739 _____          Endorsement Effective _____ JANUARY 1, 1991 _____
                                                                        (12:01 A.M.)
                                           Countersigned _____
                                                                   (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

RENEWAL ENDORSEMENT

This Policy is changed to provide:

For the period January 1, 1991 to January 1, 1992, the following Declaration items are amended as shown below:

ITEM 4  - Company's Limit of Indemnity Each Occurrence
           (a) For Workers Compensation:                                    $ 20,000,000
           (b) For Employers Liability:                                      $  1,000,000
           (c) For Workers Compensation & Employers Liability Combined:      $ 20,000,000

ITEM 5  - Insured's Retention Each Occurrence: $375,000

ITEM 6  - Business Operations of Insured        (a)    Estimated Annual Remuneration:        $
                                                (b)    Total Estimated Manual Premium:

ITEM 7  - Policy Premium: ███████         Advance Premium for this Policy: ███████
           ██% of Manual Premium

ITEM 8  - Minimum Premium for this Policy: ███████

ITEM 9  - Additional Endorsements forming part of Policy at time of Renewal: WTA-32S, WTA-01

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-4   500 (11/80)

Endorsement No. _____ 11 _____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____          Endorsement Effective _____ JANUARY 1, 1991 _____
                                                                                                              (12:01 A.M.)

                                                                      Countersigned _____

                                                                                                              (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

ADVANCE PREMIUM INSTALLMENT ENDORSEMENT

This Policy is changed to provide:

ITEM 7 of the Declarations, Advance Premium for this Policy, will be payable as follows for the period January 1, 1991 to January 1, 1992:

| DUE DATE | AMOUNT PAYABLE |
|---|---|
| January 1, 1991 | ▓▓▓ |
| July 1, 1991 | ▓▓▓ |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

Endorsement No._____12_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED ____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. ___W-141739___·___                   Endorsement Effective ___MARCH 2, 1991___

                                                                    (12:01 A.M.)

                        Countersigned _____

                                                (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

## SPECIFIC AIRCRAFT COVERAGE ENDORSEMENT

This Policy is changed to provide:

In consideration of an additional premium of ▮▮▮ as respects the Insured's liability for loss resulting from an occurrence during the contract period the Company will indemnify the Insured for loss sustained by any employee of the Insured while entering into, alighting from or riding in the aircraft specified below or their replacement which are owned by the Insured or operated by employees of the Insured.

### AIRCRAFT

1979 Cessna Skywagon

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-15 (7/90)

Endorsement No. _____ 16 _____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____     Endorsement Effective _____ JULY 1, 1991 _____
                                                    (12:01 A.M.)

                                        Countersigned _____ *Kenneth E. Hill* _____
                                                    (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

_____

ASSOCIATION ENDORSEMENT – ADDITIONAL ACCEPTABLE CODE

This Policy is changed to provide:

In accordance with Endorsement No. 6, ASSOCIATION ENDORSEMENT, Paragraph C, the following account is accepted for coverage under the indicated code(s):

| CODE | CLASSIFICATION | INSURED |
|------|----------------|---------|
| 0016 | Fruit Picking by Contractors | Oakley Groves, Inc., etal |
| 0050 | Grove Caretaking Operations by Contractors - Drivers | Oakley Groves, Inc., etal |
| 0082 | Orchard and Grove Owners and Operators- All Operations and Drivers | Oakley Groves, Inc., etal |
| 7219 | Trucking, NOC - & Drivers | Oakley Groves, Inc., etal |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-74 (9/90)

Endorsement No._____17_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED ____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. ____W-141739_____          Endorsement Effective ____JANUARY 1, 1991____
                                                           (12:01 A.M.)

                              Countersigned _____
                                                (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

AUDIT ADDITIONAL PREMIUM ENDORSEMENT

This Policy is changed to provide:

In consideration of an additional premium of ████ it is understood and agreed that the following is the final premium adjustment for the period January 1, 1990 to January 1, 1991:

| | |
|---|---|
| Actual Exposure(Earned Normal Premium) | $ ████ |
| Percent of Earned Normal Premium | ██% |
| Earned Premium | $ ████ |
| Less Advance Premium | $ ███ |
| Additional Premium | $ ███ |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-05 (7/90)

Endorsement No. _____ **15**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ **FLORIDA HOTEL-MOTEL SELF INSURERS FUND**

Policy No. _____ **W-141739**     Endorsement Effective _____ **MAY 17,1991**
                                          (11:01 A.M.)

Countersigned _____

                                          (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

This Policy is changed to provide:

In consideration of a return premium of ████, Endorsement No. 13, **SPECIFIC AIRCRAFT COVERAGE** ✓
**ENDORSEMENT**, is excluded in its entirety.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-83 (8/90)

8/11/2010 11:17

Endorsement No. ___ **22**

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED ___ **FLORIDA HOTEL-MOTEL SELF INSURERS FUND**

Policy No. ___ **W-141739** ___                     Endorsement Effective ___ **JUNE 1,1991**

(12:01 A.M.)

Countersigned _____

(Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

_____

Endorsement No. 18 is deleted in its entirety and replaced with the following:

This Policy is changed to provide:

In consideration of a return premium of [ ▮▮▮ ], Endorsement No. 12, <u>SPECIFIC AIRCRAFT COVERAGE</u>
<u>ENDORSEMENT</u>, is excluded in its entirety.



This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

**WTA-82 (8/90)**

8/11/2010 11:17

Endorsement No. _____ 19 _____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W - 141732 _____          Endorsement Effective _____ JANUARY 1, 1992 _____
                                                                        12:01 A.M.

Countersigned _____
                                                    (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

## RENEWAL ENDORSEMENT                                                         '92

This Policy is changed to provide:

For the period January 1, 1992 to January 1, 1993, the following Declaration items are amended as shown below:

ITEM 4 - Company's Limit of Indemnity Each Occurrence
    (a) For Workers Compensation:                               Statutory
    (b) For Employers Liability:                               $ 1,000,000

ITEM 5 - Insured's Retention Each Occurrence: $375,000

ITEM 6 - Business Operations of Insured    (a)    Estimated Annual Remuneration:    $ ▓▓▓▓
                                      (b)    Total Estimated Earned Normal Premium:    ▓▓▓▓

ITEM 7 - Policy Premium: ▓▓▓▓          Advance Premium for this Policy:    ▓▓▓▓
    ▓▓ % of Earned Normal Premium - See Endorsement #21

ITEM 8 - Minimum Premium for this Policy: ▓▓▓▓

ITEM 9 - Additional Endorsements forming part of Policy at time of Renewal: WTA-32S, WTA-01, WTA-82

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-32S (11/89)

Endorsement No._____ 20

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED ____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. ____ W-141739 _____                    Endorsement Effective ____ JANUARY 1, 1992 _____
                                                                              (12:01 A.M.)

                                        Countersigned _____
                                                              (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

ADVANCE PREMIUM INSTALLMENT ENDORSEMENT

This Policy is changed to provide:

ITEM 7 of the Declarations, Advance Premium for this Policy, will be payable as follows for the period January 1, 1992 to January 1, 1993:

| DUE DATE | AMOUNT PAYABLE |
|----------|----------------|
| January 1, 1992 | ▓▓▓ |
| July 1, 1992 | ▓▓▓ |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-01 (7/90)

## SPECIFIC EXCESS WORKERS COMPENSATION
## AND EMPLOYERS LIABILITY POLICY

In consideration of the payment of the premium, in reliance upon the statements in this Declarations made part of this Policy and subject to its terms, the Company named in the Declarations agrees with the Insured also named in the Declarations (herein called the Insured) as follows:

### PART 1. COVERAGE

Self-Insured Indemnity Coverage. The Company will indemnify the Insured for loss resulting from an occurrence during the contract period provided either:

(1) such loss would be covered under the Insured's qualified self-insured retention plan in those states named in Item 8 of the Declarations or;

(2) such loss would be compensable under the Workers Compensation Act of any state for employees injured who are normally employed in a state named in Item 8 of the Declarations and then only for that portion of loss, not exceeding the benefits in the state in which the injured employees are normally employed.

However, if the Insured is subject to the Workers Compensation Act when not a duly qualified self-insurer for a loss that would otherwise be covered by this Agreement, the Company will indemnify the Insured for such loss not exceeding the amount which would have been paid had the Insured been a duly qualified self-insurer.

Employers Liability Indemnity Coverage. The Company will indemnify the Insured for loss resulting from an occurrence during the contract period on account of the Insured's liability for damages because of bodily injury or occupational disease sustained by employees normally employed in a state named in Item 8 of the Declarations. This Agreement shall not indemnify the Insured for loss:

(1) for any amount exceeding that which the Insured would have sustained had the Insured not rejected the Workers Compensation Act of any state named in Item 8 of the Declarations, or any part of such act, or

(2) resulting from damages imposed in any lawsuit brought in, or any judgement rendered by any court outside the United States of America, its territories or possessions, or Canada, or to any action on such judgements, wherever brought.

### PART 2. RETENTION AND LIMIT OF INDEMNITY

No indemnity shall be afforded under this Policy, unless and until the Insured shall first have sustained loss as a result of each occurrence in excess of the amount of the Retention stated in Item 5 for the types of coverage involved of the Declarations. The Company hereby agrees to indemnify the Insured against loss as a result of each occurrence in excess of such Retention, subject to

the Limit of Indemnity provided for in Item 4 for the types of coverage involved of the Declarations.

The Company shall indemnify the Insured for claim expenses for loss in excess of the Retention in the same proportion as the amount of the loss paid by the Company in excess of the Retention bears to the total amount of such loss.

### PART 3. EXCLUSIONS

This Policy shall not apply to:

(A) punitive or exemplary damages, fines or penalties assessed against or imposed upon the Insured:

(1) on account of bodily injury or occupational disease sustained by any employee; or

(2) because of the conduct of the Insured or any of its agents (a) in the investigation, trial or settlement of any claim for which coverage is afforded under Part 1 of the Agreement, or b) in failing to pay or delaying the payment of any such benefits or damages; or

(3) on account of violation of any statute or regulation;

(B) loss arising out of any operation with respect to which the Insured carries primary workers compensation or Employers Liability Insurance coverage;

(C) under Employers Liability Indemnity Coverage in Part 1 of this Policy,

(1) liability assumed by the Insured under any contract or agreement, or

(2) any obligation for which the Insured or any carrier as his insurer may be held liable for any Workers Compensation, Unemployment Compensation or Disability benefits law, or under any similar law.

### PART 4. DEFINITIONS

DEFINITIONS: THE TERM:

(a) "bodily injury" shall include death resulting therefrom, but shall not include occupational disease;

(b) "claim expense" shall mean court costs, interest upon awards and judgements, and investigation, adjustment and legal expenses that are actually paid by the Insured as respects loss. However, the term "claim expense" shall not include loss, salaries paid to employees of the Insured nor shall it include fees and retainers paid to the Insured's service organization;

8/11/2010 11:17

(c) "employee" shall mean, any person performing work which renders the Insured liable under the Workers Compensation Act of a state named in Item 3 of the Declarations, or under the common law of any such state,

(d) "Insured's service organization" shall mean an agent of the Insured paid to service or administer the Insured's self-insured workers compensation and/or employers liability program,

(e) "loss" shall mean only such amounts as are actually paid by the Insured in payment of benefits under the applicable Workers Compensation Act, (or in settlement of its Employers Liability insured hereunder) in settlement of claims, or in satisfaction of awards or judgements  However, the term "loss" shall not include court costs, interest upon awards or judgement, investigation, adjustment and legal expenses, salaries paid to employees of the Insured, nor fees and retainers paid to the Insured's service organization,

(f) "occupational disease" shall include  (1) death resulting therefrom  (2) cumulative injuries,

(g) "occurrence", as applied to bodily injury, shall mean "accident".  Occupational disease sustained by each employee shall be deemed to be a separate occurrence and occurrence shall be deemed to take place on the date upon which the employee is last exposed at work to conditions allegedly causing such occupational disease,

(h) "remuneration" shall mean payroll developed in accordance with the rules set forth in the applicable Manual of Workers Compensation and Employers Liability Insurance,

(i) "standard premium" shall mean the premium computed by applying the agreed rates specified in Item 6 of the Declarations to the remuneration applicable in the states named in Item 3 of the Declarations,

(j) "state" shall mean any state of the United States of America and the District of Columbia,

(k) "statutory" shall mean loss in excess of any retention applicable to this Agreement,

(l) "Workers Compensation Act" shall include any separate occupational disease act, but shall not include the non-occupational disability benefit provisions of any such act

PART 5  CONTRACT PERIODS

The term "normal contract period" shall mean the period of time between 12 01 AM on the effective date of this Policy, and 12 01 AM on the expiration date, as specified in the Declarations

TAW - 03 (1/89)

The term "fractional contract period" applies only in case this Policy is cancelled effective at a date other than the end of the normal contract period, and shall mean that period of time between 12 01 AM on the effective date of this Agreement and 12 01 AM on the cancellation date of this Policy

PART 6  POLICY PREMIUM

As of the effective date stated in Item 2 of the Declarations, the Insured shall pay to the Company the Advance Premium specified in Item 7 of the Declarations, which Advance Premium shall be held for the Insured's account and shall be allowed as a credit against earned Policy Premium for the contract period

Within 45 days after the end of the contract period, the Insured shall render to Wexford Underwriting Managers, Inc , a payroll report upon a form satisfactory to Wexford Underwriting Managers, Inc , showing by classification the amount of remuneration earned by employees during the contract period, plus computations of the standard premium and the earned Policy Premium for the contract period (the latter obtained by adjusting Policy Premium as specified in Item 7 of the Declarations)

The Insured shall pay to the Company the excess, if any, of the earned Policy Premium over the Advance Premium paid at the beginning of the contract period   If such Advance Premium exceeds such earned Policy Premium, the Company shall return to the Insured the amount of such excess, subject to the Minimum Premium applicable to the normal contract period, as specified in Item 8 of the Declarations

In no event, however, shall the Policy Premium due the Company, in respect to the normal contract period be less than the applicable Minimum Premium specified in Item 8 of the Declarations   The Policy Premium due the Company in respect of the fractional contract period resulting in case this Policy is cancelled effective at a date other than the end of a normal contract period shall be set forth in Part 14 of the Policy, Cancellation

PART 7  ADMINISTRATION AND REPORTING OF CLAIMS

The Insured shall be responsible for the investigation, settlement, defense or appeal of any claim made or suit brought, or proceeding instituted against the Insured and shall give immediate notice to Wexford Underwriting Managers, Inc , upon learning of any of the following

(a) any claim, suit or proceeding that appears to involve indemnity by the Company,

(b) any occurrence, claim, award or proceeding judgement which exceeds 50% of the Retention stated in Item 5 of the Declarations,

(c) any occurrence which causes serious injury to two or more employees,

(d) any case involving:

    (1) amputation of a major extremity;

    (2) brain or spinal cord injury;

    (3) death;

    (4) disability for a period of nine months or more;

    (5) permanent total disability as defined in the Workers Compensation Act of the applicable state named in Item 3 of the Declarations;

    (6) any second or third degree burn of 25% or more of the body.

(e) the reopening of any case in which further award might involve liability of the Company.

The Insured shall make no voluntary settlement involving loss to the Company except with written consent of Wexford Underwriting Managers, Inc.

The Insured shall forward promptly to Wexford Underwriting Managers, Inc., any information it may request on the individual occurrences, claims or cases. The Insured shall render to Wexford Underwriting Managers, Inc., within 45 days of the end of the contract period an experience report, upon a form satisfactory to Wexford Underwriting Managers, Inc., showing in detail the amounts disbursed during the contract period in settling claims and the estimated future payments on, or reserves for, outstanding claims.

The Company, at its own election and expense and in addition to any indemnity for claim expenses provided by this Policy, shall have the right but not the duty to participate with the Insured in, or to assume in the name of the Insured control over, the investigation, settlement, defense or appeal of any claim, suit or proceeding which might involve liability of the Company.

**PART 8. LOSS PAYABLE**

The company will indemnify the Insured for any loss for which it may be liable under this policy as follows:

(a) As respects PART 1, Coverage, Self Insurers Indemnity Coverage, payment shall first be made by the Insured for all benefits required of the Insured under Workers Compensation Law and the Company shall reimburse the Insured at monthly intervals after the Company has received proofs of payment by the Insured. Workers Compensation awards that may involve the Company may not be settled on a lump sum basis without prior written consent of the Company.

(b) As respects PART 1, Coverage, Employers Liability Indemnity Coverage, payment shall first be made by the Insured for damages for which the Insured is legally liable. The Company will reimburse the Insured within 30 days after the Insurer has received proof of payment by the Insured.

TAW – 03 (1/89)

**PART 9. SUBROGATION AND SALVAGE**

The Insured shall prosecute any and all claims it may have against any person, firm or corporation arising out of any occurrence resulting in the payment of loss and claim expenses. All recoveries therefrom shall be applied to reduce the loss and claim expenses to which this Policy applies, after deducting from such recoveries the expenses incurred in effecting such recoveries. If the Company shall have sustained a loss or claim expenses on account of such occurrence, such net amount of the recovery as does not exceed the Company's loss and claim expenses shall be paid to the Company.

If the Insured has such a claim against any person, firm or corporation, which it fails or neglects to pursue or enforce within the reasonable time, the Company shall be subrogated to such claim and the Insured shall execute any and all papers and documents necessary to vest full right, title and interest in the claim in the Company. The Company may prosecute the claim in its own name or in the name of the Insured. The Insured shall cooperate to the fullest extent with the Company in the enforcement of any such claim. The net proceeds derived from such claim shall first be used by the Company to pay its loss and claim expenses, and any excess shall be paid to the Insured.

**PART 10. AUDIT AND INSPECTION**

The books and records of the Insured and the books and records of all agents and representatives of the Insured (including the Insured's service organization), as far as they relate to the subject matter of this Policy, shall be open to the Company and its representatives at all times during the usual business hours of the Insured and within three years after the contract period ends or within three years after the final settlement of all claims or payments made under this Policy.

The Company shall be permitted, but not obligated to inspect the Insured's properties, operations or workplaces at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such properties, operations or workplaces are safe, or healthful, or are in compliance with any code, law, rule or regulation.

**PART 11. OTHER INSURANCE**

If any other excess insurance, reinsurance or indemnity exists protecting against loss or claim expenses covered by this Policy, the indemnity afforded by this Policy shall apply in excess of such other excess insurance, reinsurance or indemnity unless such other insurance, reinsurance or indemnity shall be arranged specifically to apply only in excess of this Policy.

**PART 12. ASSIGNMENT**

No assignment of the Insured's interest hereunder shall be binding upon the Company.

**PART 13. NOTICE OR PAYMENT**

If more than one entity is named in Item 1 of the Declarations, notices, stipulations and payments to or by the entity first named in Item 1 shall be binding upon all other entities named therein.

**PART 14. CHANGE OR WAIVER**

The terms of this Policy shall not be waived or changed except by endorsement issued to form a part hereof, signed by a duly authorized representative of the Company.

**PART 15. CANCELLATION**

Either the Company or the Insured may cancel this Policy at any time by giving written notice to the other party. Such notice shall provide at least the number of days cancellation notice set forth in Item 2 of the Declarations, stating when cancellation shall be effective. However, if cancellation notice is not set forth in Item 2 of the Declarations, cancellation notice shall not be less than 30 days or such greater time as may be required by state law. This Policy does not apply to loss and claim expenses as a result of occurrences taking place after the effective date of such cancellation.

This policy may also be cancelled by the Company for non-payment of any unpaid portion of the premium by giving written notice by registered mail to the Insured at the address shown in Item 1 of the Declarations, stating when, but not less than 10 days thereafter cancellation shall be effective.

If this Policy is cancelled prior to the expiration date stated in the Declarations, the Policy Premium for the fractional contract period shall be computed following the procedure set forth in Part 6 of this Policy, Policy Premium, except;

(a) If such cancellation is at the request of the Company, or at the request of the Insured when actually retiring from the business described in the application and specified in the Declarations, the Policy Premium shall be either the earned Policy Premium obtained by applying the adjustment specified in Item 7 of the Declarations to the standard premium for such fractional contract period, or the pro rata portion of the Minimum Premium for the normal contract period, as specified in Item 8 of the Declarations, whichever is greater;

(b) If such cancellation is at the request of the Insured, when not retiring as provided for above, the Policy Premium shall be either the earned Policy Premium obtained by applying the rates specified in Item 7 of the Declarations of the adjusted standard

TAW - 02 (1/89)

premium for such fractional contract period and further adjusted in accordance with the customary short rate table and procedure or the short rate portion of the Minimum Premium for the normal contract period, as specified in Item 8 of the Declarations, whichever is greater.

Tender of earned or unearned Policy Premium by either party to this Policy shall not constitute a condition precedent to the effectiveness of cancellation as herein provided.

**PART 16. ACCEPTANCE**

By acceptance of this Policy the Insured agrees that the statements in the Declarations are the Insured's agreements and representations; that this Policy embodies all agreements existing between the Insured and the Company or any of its agents relating to this Policy; and that full compliance by the Insured with all the terms of this Policy is a condition precedent to the Company's liability hereunder.

In Witness Whereof, the Company has caused this Policy to be signed by its President and Secretary, but the Policy shall not be binding upon the Company unless the attached Declarations bearing the Policy Number is countersigned by a duly authorized representative of the Company.

Transamerica Insurance Company

_Herald G. Brone_

President

_Oli Mck_

Secretary

## Case 16-2014-CA-008328-XXXX-MA

| Department | Circuit Civil | Division | CV-A |
|---|---|---|---|
| Case Status | OPEN | File Date | 12/2/2014 2:17:51 PM |
| Judge Name | BEVERLY, THOMAS | | |

### Parties

| Name / DOB / DL / ID # | Party Type Race / Sex | Address |
|---|---|---|
| FHM INSURANCE COMPANY | PLAINTIFF / B | [redacted] , |
| TRANSAMERICA INSURANCE COMPANY | DEFENDANT / B | [redacted] , |

### Attorneys

| Name | Address | Type |
|---|---|---|
| Page, Frederick Dyer | [redacted] Jacksonville, FL 322023622 | Private Attorney |

### Fees

| Date | Description | Assessed | Paid | Balance |
|---|---|---|---|---|
| 01/12/2015 | SUMMONS($10/ea) | $10.00 | $10.00 | $0.00 |
| 12/03/2014 | SUMMONS($10/ea) | $10.00 | $10.00 | $0.00 |
| 12/03/2014 | CIR/GENERALCIVIL 3/1/2012 | $401.00 | $401.00 | $0.00 |

### Dockets

| Line | Count | Effective Entered | Description | Image |
|---|---|---|---|---|
| 1 | -- | 12/2/2014 12/3/2014 | COVER SHEET | |
| 2 | -- | 12/2/2014 12/3/2014 | COMPLAINT | |
| 3 | -- | 12/2/2014 12/3/2014 | SUMMONS ISSUED TRANSAMERICA INSURANCE COMPANY | |
| 4 | -- | 12/2/2014 12/3/2014 | CONTRACT AND INDEBTEDNESS | |
| 5 | -- | 12/3/2014 12/3/2014 | CASE FEES PAID: $411.00 ON RECEIPT NUMBER 2273314 | |
| 6 | -- | 12/3/2014 12/3/2014 | DEMAND FOR JURY TRIAL | |
| 7 | -- | 1/8/2015 1/12/2015 | AMENDED COMPLAINT | |

EXHIBIT B

| 8 | – | 1/8/2015<br>1/12/2015 | SUMMONS ISSUED TO: TIG INSURANCE COMPANY F/K/A TRANSAMERICA INSURANCE COMPANY | |
| 9 | – | 1/12/2015<br>1/12/2015 | CASE FEES PAID: $10.00 ON RECEIPT NUMBER 2298227 | |

Filing # 21133303 Electronically Filed 12/02/2014 02:17:51 PM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NUMBER:
DIVISION:

FHM INSURANCE COMPANY, a Florida
corporation,

        Plaintiff,

v.

TRANSAMERICA INSURANCE COMPANY,
a foreign corporation,

        Defendant.

_____/

## COMPLAINT

    Plaintiff, FHM Insurance Company, a Florida corporation, hereby sues

Defendant, Transamerica Insurance Company, and alleges as follows:

### General Allegations

    1.    This is an action for damages in excess of $15,000.00, exclusive of

interest, costs, and attorneys' fees, and for declaratory relief pursuant to Chapter

86, Florida Statutes, in which the amount in controversy exceeds $15,000.00,

exclusive of interest, costs, and attorneys' fees.

    2.    Plaintiff, FHM Insurance Company ("FHM"), a Florida corporation, is

the successor-in-interest to Florida Hotel-Motel Self Insurers Fund (the "Self

Insurers Fund").  FHM's principal place of business is in Jacksonville, Duval

County, Florida.

EXHIBIT COMPOSITE C

3.    Defendant, Transamerica Insurance Company ("TIG"), is a foreign corporation with its principal place of business in Manchester, New Hampshire.

4.    TIG is subject to the jurisdiction of this Court pursuant to Chapter 48, Florida Statutes, because the causes of action alleged herein arise out of TIG:

    (a)    operating, conducting, engaging in, or carrying on a business or business venture in the State of Florida, or having an office or agency in this state; and/or

    (b)    breaching a contract in the State of Florida by failing to perform acts required by the contract to be performed in this state; and/or

    (c)    contracting to insure any person, property or risk located within this state at the time of contracting.

5.    Additionally and alternatively, TIG is subject to the jurisdiction of this Court pursuant to Chapter 48, Florida Statutes, because at all relevant times hereto, TIG has been engaged in substantial and not isolated activity within the State of Florida.

6.    TIG issued a Specific Excess Workers' Compensation Insurance Policy to the Self Insurers Fund for the term of January 1, 1990 through January 1, 1991 (the "Policy"). A true and correct copy of the Policy is attached hereto as Exhibit "1".

7.    Under the Policy, the Self Insurers Fund is insured by TIG for "Loss," as that term is defined in the Policy, incurred in excess of $375,000 on any workers' compensation claim of one of its member's employees which originated during the policy period.

2

8.     One such workers' compensation claim was submitted to the Self Insurers Fund by Fred Cornell, an employee of one of the Fund's members.

9.     On or about January 3, 1990, Mr. Cornell was injured in a workplace accident that caused him to suffer certain injuries which were compensable under Florida's workers' compensation laws.

10.    Over the past twenty-two (22) years, FHM and its predecessors have incurred Loss that exceeds $375,000 on Mr. Cornell's workers' compensation claim.

11.    For many years, TIG has reimbursed FHM under the Policy for Loss incurred by FHM in excess of $375,000 on Mr. Cornell's workers' compensation claim.

12.    FHM's payment to Mr. Cornell's health care providers for services and care he has received constitutes: (a) the payment of worker's compensation benefits to Mr. Cornell as required by law, and (b) Loss under the Policy.

13.    At all times relevant hereto, TIG has been informed of the progress of Mr. Cornell's condition and costs incurred with his medical care through quarterly and/or quarterly semi-annual reports, medical updates, and other records, including FHM's quarterly submissions of claims for Loss incurred.

14.    TIG has expressly and/or impliedly consented to the medical care and services provided to Mr. Cornell, the rates charged for that care and services, and FHM's payment of benefits to or for Mr. Cornell either before and/or after the benefits were paid, through: (a) its conduct or express agreement, (b) its participation in the administration of Mr. Cornell's claim, and/or (c) its payment of

3

FHM's submissions of claims for Loss incurred on Mr. Cornell's claim without protest.

15.    In 2013, TIG challenged FHM's administration of Mr. Cornell's claim. Thereafter, TIG refused to pay FHM for certain amounts of Loss incurred when FHM paid benefits to or for Mr. Cornell, including payments to Mr. Cornell's health care providers for treating certain medical conditions of Mr. Cornell.

16.    TIG has also refused to fully reimburse FHM under the Policy for amounts paid by FHM to Eagle Medical Review ("Eagle") and Insurance Recovery Consultants ("IRC") pursuant to FHM's contracts with these parties for services related to Mr. Cornell's claim.

17.    TIG currently owes FHM in excess of $350,000.00.

18.    FHM has retained the undersigned counsel to represent its interests herein and is obligated to pay a reasonable fee for their services.

19.    All conditions precedent to maintaining this action have occurred, have been satisfied, or have otherwise been waived by TIG.

### COUNT I — Breach of Contract

20.    FHM reasserts and realleges the allegations of paragraphs 1 through 19 as if fully set forth herein.

21.    TIG breached the Policy by refusing to timely reimburse FHM for amounts paid out in excess of FHM's self insured retention limit of $375,000 on the workers' compensation claim of Mr. Cornell.

4

22.     TIG breached the Policy by refusing to timely reimburse FHM in full for amounts paid to Eagle and IRC for adjusting services rendered on Mr. Cornell's file.

23.     As a result of TIG's breach of the Policy, FHM has been damaged.

**WHEREFORE**, Plaintiff, FHM Insurance Company, prays for judgment for damages against Defendant, Transamerica Insurance Company, together with interest, costs, and attorneys' fees pursuant to applicable Florida law, including, without limitation, section 627.428, Florida Statutes together with all further relief the Court deems fair and just.

## COUNT II — Declaratory Relief

24.     FHM reasserts and realleges the allegations of paragraphs 1 through 19 and 21 through 23 as if fully set forth herein.

25.     There is a dispute between the parties concerning FHM's and TIG's legal and equitable rights and obligations under the Policy.

26.     FHM is entitled to declaratory relief under Chapter 86, Florida Statutes, addressing the rights and obligations of FHM and TIG under the Policy.

**WHEREFORE**, Plaintiff, FHM Insurance Company, prays for declaration against Defendant, Transamerica Insurance Company, as follows:

(a)     declaring that TIG breached the Policy by refusing to timely pay FHM for all Loss incurred in connection with Mr. Cornell's workers' compensation claim in excess of $375,000;

(b)     declaring that TIG breached the Policy by refusing to timely reimburse FHM for amounts paid to Eagle and IRC for services rendered relating to Mr. Cornell's file;

5

(c)   awarding FHM damages for TIG's failure to timely pay FHM for Loss incurred under the Policy, together with all interest, costs, and attorneys' fees pursuant to applicable Florida law, including, without limitation, section 627.428, Florida Statutes;

(d)   declaring that TIG is barred from raising its protests at this time by the applicable statute of limitations, the doctrine of laches, the doctrine of waiver, and the doctrine of estoppel because TIG has audited, ratified, and knowingly accepted the claims for Loss submitted by FHM for many years, and/or FHM has relied on TIG's statements and conduct in connection with Mr. Cornell's workers' compensation claim to its detriment; and

(e)   awarding all such further legal, equitable and declaratory relief that the Court deems just and appropriate.

## JURY TRIAL DEMAND

FHM demands a trial by jury on all issues so triable.

**HOLLAND & KNIGHT LLP**

_____
Frederick D. Page, Esquire
Florida Bar No. 968587
50 N. Laura Street, Suite 3900
Jacksonville, Florida  32202
(904) 353-2000
(904) 358-1872 (facsimile)
Attorneys for Plaintiff, Florida
Hospitality Mutual Ins. Co.

6

E

X

H

I

B

I

T

1

# SPECIFIC EXCESS WORKERS' COMPENSATION POLICY

### TRANSAMERICA INSURANCE COMPANY
(A Stock Company, herein called the "Company")
6300 Canoga Avenue, Woodland Hills, California 91367

WEXFORD UNDERWRITING MANAGERS, INC.
260 California Street, Suite 900, San Francisco, CA 94111

POLICY NUMBER: W - 141739

# DECLARATIONS

ITEM 1   – Name and Address of Insured:      Florida Hotel-Motel Self Insurers Fund
P. O. Box 3145
St. Augustine, Florida 32085-3145

ITEM 2   – Effective Date: January 1, 1990               Expiration Date: January 1, 1991
12:01 A.M., standard time at the address of the Insured as stated herein.
Cancellation Notice: 60 Days

ITEM 3   – Coverage under this Policy applies to the Workers' Compensation Act of each of the following states:
Florida

ITEM 4   – Company's Limit of Indemnity Each Occurrence
        (a) For Workers' Compensation:                   $20,000,000
        (b) For Employer's Liability: See Endorsement #2     $ 1,000,000
        (c) For Workers' Compensation & Employer's Liability Combined:     $20,000,000

ITEM 5   – Insured's Retention Each Occurrence:     $375,000

ITEM 6   – Business Operations of Insured

| CLASSIFICATION OF OPERATIONS | CODE NO. | ESTIMATED ANNUAL REMUNERATION | RATE PER $100 REMUNERATION | ESTIMATED STANDARD PREMIUM |
|---|---|---|---|---|
| All Operations See Endorsement #6 | — | ▓▓▓ | | ▓▓▓ |

Total Estimated Earned Normal Premium:   ▓▓▓

ITEM 7   – Policy Premium: ▓▓▓            Advance Premium for this Policy:   ▓▓▓
        ▓▓▓% of Earned Normal Premium
        See Endorsement #6

ITEM 8   – Minimum Premium for this Policy: ▓▓▓

ITEM 9   – Endorsements forming part of Policy at time of issue: WTA-01, WTA-30, WTA-09, WTA-11, WTA-14A, WTA-23,
WTA-34, WTA-106A

The declarations shall not be binding on the Company unless countersigned by a duly authorized representative of the Company.
Dated at   WINTER PARK, FLA.      this 24TH day of JAN,     , 1990

By _(signature)_
(Authorized Representative)

Producer's Name:   MacDuff Underwriters, Inc.              Producer's Code: WP - 0047

TAW - 01 (1-89)

GU 268
(11-85)

### IL 09 17 11 85
## RESIDENT AGENT COUNTERSIGNATURE ENDORSEMENT

Policy Number:    W-141739

Company:          TRANSAMERICA INSURANCE COMPANY

Named Insured:    FLORIDA HOTEL-MOTEL SELF INSURERS FUND

| State | Premium |
|-------|---------|
| FLORIDA | ▇▇▇▇ |

The signature shown on this endorsement complies with the countersignature laws and regulations of the State shown.

Date of Countersignature ___1-24-90___
(month, day and year)



_____
Licensed Resident Agent

Copyright, Insurance Services Office, Inc., 1983
Copyright, ISO Commercial Risk Services, Inc., 1983

Endorsement No. _____ 1 _____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____          Endorsement Effective _____ JANUARY 1, 1990 _____
                                                                    (12.01 A.M.)

                          Countersigned _____
                                                    (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

## ADVANCE PREMIUM INSTALLMENT ENDORSEMENT

This Policy is changed to provide:

Item 7 of the Declarations, Advance Premium for this policy, will be payable as follows for the period January 1, 1990 to January 1, 1991:

| DUE DATE | AMOUNT PAYABLE |
|----------|----------------|
| January 1, 1990 | ██████████ |
| July 1, 1990 | ██████████ |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-01 (1/89)

Endorsement No. ___2___

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED_____FLORIDA HOTEL-MOTEL SELF INSURERS FUND

Policy No. _____W-141739_____          Endorsement Effective_____JANUARY 1, 1990

(12:01 A.M.)

Countersigned_____

(Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

## EMPLOYERS LIABILITY LIMITATION ENDORSEMENT

This Policy is changed to provide:

Notwithstanding anything in the Policy to the contrary, when this Endorsement is used, the Company's liability under that portion of Part 1, Coverage, of the Policy which is entitled, "Employers Liability Indemnity Coverage," shall be subject to the following per occurrence limitations. The Company's maximum limit of liability thereunder for loss arising out of any occurrence shall not exceed:

$1,000,000 Each Occurrence ✓

in excess of the Insured's retention set forth in Item 5 of the Declarations applicable to each occurrence.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-30 (1/89)

Endorsement No. _____ 3 _____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____                    Endorsement Effective _____ JANUARY 1, 1990 _____
                                                                                          (12:01 A.M.)

                                        Countersigned _____
                                                                      (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California
_____

JONES ACT EXCLUSION ENDORSEMENT

This Policy is changed to provide:

This policy excludes all liability under the Merchant Marine Act of 1920, known as the Jones Act, (46 U.S. Code, Section 688, 1970), and any amendment to that Act that is in effect during the period this policy is in force.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-09 (1/89)

Endorsement No. _____4_____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein.  (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED_____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. _____W-141739_____                Endorsement Effective_____JANUARY 1, 1990_____
                                                                                  (12:01 A.M.)

                                   Countersigned_____
                                            ,                    (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

LONGSHOREMEN'S AND HARBOR WORKERS
COMPENSATION EXCLUSION ENDORSEMENT

This Policy is changed to provide:

This policy excludes all liability under the United States Longshoremen's and Harbor Workers Act (33 U.S.C. Sections 901-950), and any amendment to that Act that is in effect during the period this policy is in effect.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-11 (1/89)

Endorsement No. _____**5**_____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____**FLORIDA HOTEL-MOTEL SELF INSURERS FUND**_____

Policy No. _____**W-141739**_____          Endorsement Effective_____**JANUARY 1, 1990**_____
                                                                        (12:01 A.M.)

                                   Countersigned_____
                                                             (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

_____

<u>AIRCRAFT EXCLUSION ENDORSEMENT</u>


This Policy is changed to provide:

This policy excludes bodily injury by accident or bodily injury by disease, including resulting death, sustained by any employee of the Insured while entering into, alighting from or riding in any aircraft owned, leased or chartered by the Insured or operated by employees of the Insured.


This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-14A (1/89)

Endorsement No._____6_____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED_____**FLORIDA HOTEL-MOTEL SELF INSURERS FUND**_____

Policy No. _____W-141739_____                Endorsement Effective_____**JANUARY 1, 1990**_____
                                                                                              **(12:01 A.M.)**

                                          Countersigned___._____
                                                                              **(Authorized Representative)**

by **TRANSAMERICA INSURANCE COMPANY,** Woodland Hills, California
_____

ASSOCIATION ENDORSEMENT

This Policy is changed to provide:

A) Item 1, of the Declarations shall read as follows:

     1. Insured:    Florida Hotel-Motel Self Insurers Fund
                P. O. Box 3145
                St. Augustine, Florida  32085-3145

    It is agreed that the insurance afforded by this policy shall apply to any member which joins the Florida Hotel-Motel Self Insurers Fund in strict compliance with the Fund's bylaws during the contract period. All provisions of this policy shall apply separately to each member named herein except that:

    a)  The Retentions and Limits specified in Items 4 and 5 of the Declarations shall apply jointly to all such members as a group.

B) Item 6 of the Declarations shall read as follows:

    a)  Premium Rate: ▮▮% of Earned Normal Premium. Earned Normal Premium is defined as the rate times the payroll times the experience mod, less a 15% filed fund discount.

    a1)  Estimated Earned Normal Premium: ▮▮▮▮▮▮

C) Furthermore, coverage is additionally restricted to the following NCCI Code Classifications, which were provided with the submission, and on which our acceptance of this Fund was made.

| CODE | CLASSIFICATION |
|------|----------------|
| 0008 | Farms |
| 0042 | Landscaping |
| 0083 | Farm-Cattle or Livestock Raising NOC & Drivers |
| 2003 | Bakery & Drivers |
| 2585 | Laundry NOC & Route Supervisors, Drivers |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-23 (1/89)

Endorsement No. _____ 6 (Cont.)

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND

Policy No. _____ W-141739 _____                   Endorsement Effective _____ JANUARY 1, 1990
                                                                              (12:01 A M )

Countersigned _____
                                        (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

| | |
|---|---|
| 2589 | Laundry & Dry Cleaning Store-Retail |
| 4361 | Photo-All Employees & Clerical, Sales, Drivers |
| 5022 | Masonry |
| 5192 | Vending or Coin Operated Machines Installation, Service or Repair |
| 5348 | Tile, Stone, Mosaic-Interior Only |
| 5403 | Carpentry NOC |
| 5437 | Carpentry Installation of Cabinet Work or Interior Trim |
| 5474 | Painting & Decorating |
| 5606 | Contractor Executive Supervisors |
| 5610 | Cleaners-Removal of Debris |
| 5645 | Carpentry-One Story Dwellings |
| 6836 | Marina Operations & Drivers |
| 7201 | Livery or Boarding Stable & Drivers |
| 7380 | Chauffeurs & Helpers |
| 7382 | Automobile, Bus, Taxi Operations-All Other |
| 7520 | Waterworks Operations & Drivers |
| 7605 | Burglar Alarm Installation |
| 7720 | Police Officers & Drivers |
| 8006 | Grocery Store-Retail |
| 8008 | Store Dry Goods-Retail |
| 8017 | Store Risk-Retail NOC |
| 8018 | Store-Wholesale |
| 8021 | Meat, Fish or Poultry Dealer-Wholesale |
| 8031 | Store-Meat, Fish or Poultry-Retail |
| 8033 | Store-Meat, Grocery & Provision-Retail |
| 8380 | Auto Repair, Parts, Accessory |
| 8381 | Gasoline Station-Retail |
| 8385 | Bus Co., Garage Employees, School Bus Contractor |
| 8742 | Salesmen |
| 8748 | Automobile Sales or Service Agencies |
| 8810 | Clerical |
| 8820 | Attorney |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-23 (1/89)

Endorsement No _____ 6 (Cont.)

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND

Policy No. _____ W-141739 _____    Endorsement Effective_____ JANUARY 1, 1990 _____
                                                                    (12:01 A M )

Countersigned_____
                                        (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

| | |
|---|---|
| 8829 | Convalescent Home |
| 9015 | Buildings |
| 9016 | Amusement Park or Exhibition |
| 9047 | Nursing Home-All Employees |
| 9052 | Hotel-All Employees, Salespersons, & Drivers |
| 9058 | Hotel Restaurant Employees |
| 9060 | County Club |
| 9061 | Clubs NOC |
| 9063 | YMCA and YWCA |
| 9079 | Restaurant NOC |
| 9154 | Theater, All Other Employees |
| 9156 | Theater: Players, Entertainers, or Musicians |
| 9180 | Amusement Device Operation NOC |
| 9586 | Barber Shop or Beauty Parlor |

● This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-23 (1/89)

Endorsement No. _____ 7 _____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____          Endorsement Effective _____ JANUARY 1, 1990

(12:01 A.M.)

Countersigned _____

(Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

F.E.L.A. EXCLUSION ENDORSEMENT

This Policy is changed to provide:

This Policy excludes all liability under the Federal Employers Liability Act, known as F.E.L.A., and any amendment to that Act that is in effect during the period this policy is in force.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-34 (1/89)

8/11/2010 11·16

Endorsement No.____8_____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED____ **FLORIDA HOTEL-MOTEL SELF INSURERS FUND** _____

Policy No. ____W-141739____          Endorsement Effective____ **JANUARY 1, 1990**____

(12.01 A.M.)

Countersigned_____

(Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

## FLORIDA CANCELLATION ENDORSEMENT

This Policy is changed to provide:

Part 15, Cancellation, is amended as follows:

A.  The Insured may cancel this policy at any time by giving at least 60 days written notice of it's intent by certified mail to the Company and to the

> Florida Department of Labor and Employment Security
> Division of Worker's Compensation
> Bureau of Worker's Compensation Self-Insurance
> 2728 Centerview Drive
> Suite 239, Forrest Building
> Tallahassee, Florida 33399-0666

B.  If this policy is cancelled or nonrenewed by the Company, at least 60 days written notice of it's intent will be given by certified mail to the Insured and to the

> Florida Department of Labor and Employment Security
> Division of Worker's Compensation
> Bureau of Worker's Compensation Self-Insurance
> 2728 Centerview Drive
> Suite 239, Forrest Building
> Tallahassee, Florida 33399-0666

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-106A (1/89)

Endorsement No.＿＿＿ **22**＿＿＿

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED＿＿＿ **FLORIDA HOTEL-MOTEL SELF INSURERS FUND**＿＿＿＿＿＿

Policy No.＿ **W-141739**＿＿＿＿＿     Endorsement Effective＿＿＿ **JANUARY 1, 1990**＿＿＿

                                                                  (12.01 A.M.)

                              Countersigned＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿

                                                        (Authorised Representative)

by **TRANSAMERICA INSURANCE COMPANY**, Woodland Hills, California

## FLORIDA AMENDATORY ENDORSEMENT

This Policy is changed to provide:

Upon the direction of the Florida Division of Workers Compensation, the Company will pay all monies due under the terms and conditions of this Policy directly to the claimant or such other party as the Division may appoint.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-106B (2/92)

Endorsement No. __23__

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED ____ **FLORIDA HOTEL-MOTEL SELF INSURERS FUND** _____

Policy No. ____ W-141739 _____          Endorsement Effective __JANUARY 1, 1990__ _____
                                                                                        (12:01 A.M.)

                                          Countersigned _____
                                                                              (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

Endorsement No. 22, FLORIDA AMENDATORY ENDORSEMENT, is deleted in its entirety and replaced with the following:

FLORIDA AMENDATORY ENDORSEMENT

This Policy is changed to provide:

Upon the direction of the Florida Division of Workers Compensation, the Company will pay all monies due under the terms and conditions of this Policy directly to the claimant or such other party as the Division may appoint.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-106B (2/92)

8/11/2010 11:16

Endorsement No._____9_____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED_____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. _____W-141739_____                    Endorsement Effective _____JANUARY 22, 1990_____
                                                                                   (12:01 A.M.)

                                              Countersigned _____
                                                                              (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

## DECLARATIONS AMENDATORY ENDORSEMENT

This Policy is changed to provide:

ITEM 1 of the Declarations, Name and Address of Insured, is amended to read:

                    Florida Hotel-Motel Self Insurers Fund
                    9485 Regency Square Boulevard
                    Suite 415
                    Jacksonville, Florida  32225

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-32 (8/90)

# SPECIFIC EXCESS WORKERS COMPENSATION
## AND EMPLOYERS LIABILITY POLICY

In consideration of the payment of the premium, in reliance upon the statements in this Declarations made part of this Policy and subject to its terms, the Company named in the Declarations agrees with the Insured also named in the Declarations (herein called the Insured) as follows:

## PART 1. COVERAGE

Self-Insured Indemnity Coverage.   The Company will indemnify the Insured for loss resulting from an occurrence during the contract period provided either:

(1) such loss would be covered under the Insured's qualified self-insured retention plan in those states named in Item 3 of the Declarations or;

(2) such loss would be compensable under the Workers Compensation Act of any state for employees injured who are normally employed in a state named in Item 3 of the Declarations and then only for that portion of loss, not exceeding the benefits in the state in which the injured employees are normally employed.

However, if the Insured is subject to the Workers Compensation Act when not a duly qualified self-insurer for a loss that would otherwise be covered by this Agreement, the Company will indemnify the Insured for such loss not exceeding the amount which would have been paid had the Insured been a duly qualified self-insurer.

Employers Liability Indemnity Coverage.   The Company will indemnify the Insured for loss resulting from an occurrence during the contract period on account of the Insured's liability for damages because of bodily injury or occupational disease sustained by employees normally employed in a state named in Item 3 of the Declarations. This Agreement shall not indemnify the Insured for loss:

(1) for any amount exceeding that which the Insured would have sustained had the Insured not rejected the Workers Compensation Act of any state named in Item 3 of the Declarations, or any part of such act, or

(2) resulting from damages imposed in any lawsuit brought in, or any judgement rendered by any court outside the United States of America, its territories or possessions, or Canada, or to any action on such judgements, wherever brought.

## PART 2. RETENTION AND LIMIT OF INDEMNITY

No indemnity shall be afforded under this Policy, unless and until the Insured shall first have sustained loss as a result of each occurrence in excess of the amount of the Retention stated in Item 5 for the types of coverage involved of the Declarations. The Company hereby agrees to indemnify the Insured against loss as a result of each occurrence in excess of such Retention, subject to

the Limit of Indemnity provided for in Item 4 for the types of coverage involved of the Declarations.

The Company shall indemnify the Insured for claim expenses for loss in excess of the Retention in the same proportion as the amount of the loss paid by the Company in excess of the Retention bears to the total amount of such loss.

## PART 3. EXCLUSIONS

This Policy shall not apply to:

(A) punitive or exemplary damages, fines or penalties assessed against or imposed upon the Insured:

(1) on account of bodily injury or occupational disease sustained by any employee; or

(2) because of the conduct of the Insured or any of its agents (a) in the investigation, trial or settlement of any claim for which coverage is afforded under Part 1 of the Agreement, or b)  in failing to pay or delaying the payment of any such benefits or damages; or

(3) on account of violation of any statute or regulation;

(B) loss arising out of any operation with respect to which the Insured carries primary workers compensation or Employers Liability insurance coverage;

(C) under Employers Liability Indemnity Coverage in Part 1 of this Policy,

(1) liability assumed by the Insured under any contract or agreement, or

(2) any obligation for which the Insured or any carrier as his Insurer may be held liable for any Workers Compensation, Unemployment Compensation or Disability benefits law, or under any similar law.

## PART 4. DEFINITIONS

DEFINITIONS: THE TERM:

(a) "bodily injury" shall include death resulting therefrom, but shall not include occupational disease;

(b) "claim expense" shall mean court costs, interest upon awards and judgements, and investigation, adjustment and legal expenses that are actually paid by the Insured as respects loss.  However, the term "claim expenses" shall not include loss, salaries paid to employees of the Insured nor shall it include fees and retainers paid to the Insured's service organization;

(c) "employee" shall mean, any person performing work which renders the Insured liable under the Workers Compensation Act of a state named in Item 3 of the Declarations, or under the common law of any such state;

(d) "Insured's service organization" shall mean an agent of the Insured paid to service or administer the Insured's self-insured workers compensation and/or employers liability program;

(e) "loss" shall mean only such amounts as are actually paid by the Insured in payment of benefits under the applicable Workers Compensation Act, (or in settlement of its Employers Liability insured hereunder) in settlement of claims, or in satisfaction of awards or judgements. However, the term "loss" shall not include court costs, interest upon awards or judgement, investigation, adjustment and legal expenses, salaries paid to employees of the Insured, nor fees and retainers paid to the Insured's service organization;

(f) "occupational disease" shall include:   (1) death resulting therefrom. (2) and cumulative injuries;

(g) "occurrence", as applied to bodily injury, shall mean "accident". Occupational disease sustained by each employee shall be deemed to be a separate occurrence and occurrence shall be deemed to take place on the date upon which the employee is last exposed at work to conditions allegedly causing such occupational disease;

(h) "remuneration" shall mean payroll developed in accordance with the rules set forth in the applicable Manual of Workers Compensation and Employers Liability Insurance;

(i) "standard premium" shall mean the premium computed by applying the agreed rates specified in Item 6 of the Declarations to the remuneration applicable in the states named in Item 3 of the Declarations;

(j) "state" shall mean any state of the United States of America and the District of Columbia;

(k) "statutory" shall mean loss in excess of any retention applicable to this Agreement;

(l) "Workers Compensation Act" shall include any separate occupational disease act, but shall not include the non-occupational disability benefit provisions of any such act.

PART 5.  CONTRACT PERIODS

The term "normal contract period" shall mean the period of time between 12:01 AM on the effective date of this Policy, and 12:01 AM on the expiration date, as specified in the Declarations.

TAW - 02 (1/89)

The term "fractional contract period" applies only in case this Policy is cancelled effective at a date other than the end of the normal contract period, and shall mean that period of time between 12:01 AM on the effective date of this Agreement and 12:01 AM on the cancellation date of this Policy.

PART 6.  POLICY PREMIUM

As of the effective date stated in Item 2 of the Declarations, the Insured shall pay to the Company the Advance Premium specified in Item 7 of the Declarations, which Advance Premium shall be held for the Insured's account and shall be allowed as a credit against earned Policy Premium for the contract period.

Within 45 days after the end of the contract period, the Insured shall render to Wexford Underwriting Managers, Inc., a payroll report upon a form satisfactory to Wexford Underwriting Managers, Inc., showing by classification the amount of remuneration earned by employees during the contract period, plus computations of the standard premium and the earned Policy Premium for the contract period (the latter obtained by adjusting Policy Premium as specified in Item 7 of the Declarations).

The Insured shall pay to the Company the excess, if any, of the earned Policy Premium over the Advance Premium paid at the beginning of the contract period.   If such Advance Premium exceeds such earned Policy Premium, the Company shall return to the Insured the amount of such excess, subject to the Minimum Premium applicable to the normal contract period, as specified in Item 8 of the Declarations.

In no event, however, shall the Policy Premium due the Company, in respect to the normal contract period be less than the applicable Minimum Premium specified in Item 8 of the Declarations.   The Policy Premium due the Company in respect of the fractional contract period resulting in case this Policy is cancelled effective at a date other than the end of a normal contract period shall be set forth in Part 14 of the Policy, Cancellation.

PART 7.  ADMINISTRATION AND REPORTING OF CLAIMS

The Insured shall be responsible for the investigation, settlement, defense or appeal of any claim made or suit brought, or proceeding instituted against the Insured and shall give immediate notice to Wexford Underwriting Managers, Inc., upon learning of any of the following:

(a) any claim, suit or proceeding that appears to involve indemnity by the Company;

(b) any occurrence, claim, award or proceeding judgement which exceeds 50% of the Retention stated in Item 8 of the Declarations;

(c) any occurrence which causes serious injury to two or more employees;

(d) any case involving:

    (1) amputation of a major extremity;

    (2) brain or spinal cord injury;

    (3) death;

    (4) disability for a period of nine months or more;

    (5) permanent total disability as defined in the Workers Compensation Act of the applicable state named in Item 3 of the Declarations;

    (6) any second or third degree burn of 25% or more of the body.

(e) the reopening of any case in which further award might involve liability of the Company.

The Insured shall make no voluntary settlement involving loss to the Company except with written consent of Wexford Underwriting Managers, Inc.

The Insured shall forward promptly to Wexford Underwriting Managers, Inc., any information it may request on the individual occurrences, claims or cases.  The Insured shall render to Wexford Underwriting Managers, Inc., within 45 days of the end of the contract period an experience report, upon a form satisfactory to Wexford Underwriting Managers, Inc., showing in detail the amounts disbursed during the contract period in settling claims and the estimated future payments on, or reserves for, outstanding claims.

The Company, at its own election and expense and in addition to any indemnity for claim expenses provided by this Policy, shall have the right but not the duty to participate with the Insured in, or to assume in the name of the Insured control over, the investigation, settlement, defense or appeal of any claim, suit or proceeding which might involve liability of the Company.

## PART 8.  LOSS PAYABLE

The company will indemnify the Insured for any loss for which it may be liable under this policy as follows:

(a) As respects PART 1, Coverage, Self Insurers Indemnity Coverage, payment shall first be made by the Insured for all benefits required of the Insured under Workers Compensation Law and the Company shall reimburse the Insured at monthly intervals after the Company has received proofs of payment by the Insured.  Workers Compensation awards that may involve the Company may not be settled on a lump sum basis without prior written consent of the Company.

(b) As respects PART 1, Coverage, Employers Liability Indemnity Coverage, payment shall first be made by the Insured for damages for which the Insured is legally liable.  The Company will reimburse the Insured within 30 days after the Insurer has received proof of payment by the Insured.

TAW - 02 (1/89)

## PART 9.  SUBROGATION AND SALVAGE

The Insured shall prosecute any and all claims it may have against any person, firm or corporation arising out of any occurrence resulting in the payment of loss and claim expenses.  All recoveries therefrom shall be applied to reduce the loss and claim expenses to which this Policy applies, after deducting from such recoveries the expenses incurred in effecting such recoveries,  If the Company shall have sustained a loss or claim expenses on account of such occurrence, such net amount of the recovery as does not exceed the Company's loss and claim expenses shall be paid to the Company.

If the Insured has such a claim against any person, firm or corporation, which it fails or neglects to pursue or enforce within the reasonable time, the Company shall be subrogated to such claim and the Insured shall execute any and all papers and documents necessary to vest full right, title and interest in the claim in the Company.  The Company may prosecute the claim in its own name or in the name of the Insured.  The Insured shall cooperate to the fullest extent with the Company in the enforcement of any such claim.  The net proceeds derived from such claim shall first be used by the Company to pay its loss and claim expenses, and any excess shall be paid to the Insured."

## PART 10.  AUDIT AND INSPECTION

The books and records of the Insured and the books and records of all agents and representatives of the Insured (including the Insured's service organization), as far as they relate to the subject matter of this Policy, shall be open to the Company and its representatives at all times during the usual business hours of the Insured and within three years after the contract period ends or within three years after the final settlement of all claims or payments made under this Policy.

The Company shall be permitted, but not obligated to inspect the Insured's properties, operations or workplaces at any time.  Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such properties, operations or workplaces are safe, or healthful, or are in compliance with any code, law, rule or regulation.

## PART 11.  OTHER INSURANCE

If any other excess insurance, reinsurance or indemnity exists protecting against loss or claim expenses covered by this Policy, the indemnity afforded by this Policy shall apply in excess of such other excess insurance, reinsurance or indemnity unless such other insurance, reinsurance or indemnity shall be arranged specifically to apply only in excess of this Policy.

**PART 12. ASSIGNMENT**

No assignment of the Insured's interest hereunder shall be binding upon the Company.

**PART 13. NOTICE OR PAYMENT**

If more than one entity is named in Item 1 of the Declarations, notices, stipulations and payments to or by the entity first named in Item 1 shall be binding upon all other entities named therein.

**PART 14. CHANGE OR WAIVER**

The terms of this Policy shall not be waived or changed except by endorsement issued to form a part hereof, signed by a duly authorized representative of the Company.

**PART 15. CANCELLATION**

Either the Company or the Insured may cancel this Policy at any time by giving written notice by registered mail to the other party. Such notice shall provide at least the number of days cancellation notice set forth in Item 2 of the Declarations, stating when cancellation shall be effective. However, if cancellation notice is not set forth in Item 2 of the Declarations, cancellation notice shall not be less than 30 days or such greater time as may be required by state law. This Policy does not apply to loss and claim expenses as a result of occurrences taking place after the effective date of such cancellation.

This policy may also be cancelled by the Company for non-payment of any unpaid portion of the premium by giving written notice by registered mail to the Insured at the address shown in Item 1 of the Declarations, stating when, but not less than 10 days thereafter cancellation shall be effective.

If this Policy is cancelled prior to the expiration date stated in the Declarations, the Policy Premium for the fractional contract period shall be computed following the procedure set forth in Part 6 of this Policy, Policy Premium, except:

(a) if such cancellation is at the request of the Company, or at the request of the Insured when actually retiring from the business described in the application and specified in the Declarations, the Policy Premium shall be either the earned Policy Premium obtained by applying the adjustment specified in Item 7 of the Declarations to the standard premium for such fractional contract period, or the pro rata portion of the Minimum Premium for the normal contract period, as specified in Item 8 of the Declarations, whichever is greater;

(b) if such cancellation is at the request of the Insured, when not retiring as provided for above, the Policy Premium shall be either the earned Policy Premium obtained by applying the rates specified in Item 7 of the Declarations of the adjusted standard premium for such fractional contract period and further adjusted in accordance with the customary short rate table and procedure or the short rate portion of the Minimum Premium for the normal contract period, as specified in Item 8 of the Declarations, whichever is greater.

Tender of earned or unearned Policy Premium by either party to this Policy shall not constitute a condition precedent to the effectiveness of cancellation as herein provided.

**PART 16. ACCEPTANCE**

By acceptance of this Policy the Insured agrees that the statements in the Declarations are the Insured's agreements and representations; that this Policy embodies all agreements existing between the Insured and the Company or any of its agents relating to this Policy; and that full compliance by the Insured with all the terms of this Policy is a condition precedent to the Company's liability hereunder.

In Witness Whereof, the Company has caused this Policy to be signed by its President and Secretary, but the Policy shall not be binding upon the Company until is the attached Declarations bearing the Policy Number is countersigned by a duly authorized representative of the Company.

**Transamerica Insurance Company**

_Harold G. Jones_

---
President

_Cole Miller_

---
Secretary

TAW - 02 (1/89)

Endorsement No. _____13_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED ____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. ____W-141739____                    Endorsement Effective ____APRIL 15, 1991____
                                                        (12:01 A.M.)

                              Countersigned _____
                                                    (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

DECLARATIONS AMENDATORY ENDORSEMENT

'91

This Policy is changed to provide:

ITEM 8 of the Declarations, Minimum Premium, is amended to read: ███████

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-82 (8/90)

Endorsement No. _____ 14 _____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141789 _____         Endorsement Effective _____ JULY 1, 1991 _____
                                                              (12:01 A.M.)

                                 Countersigned _____ _Kenneth E Hill_ _____
                                                          (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

DECLARATIONS AMENDATORY ENDORSEMENT

This Policy is changed to provide:

ITEM 7 of the Declarations, Policy Premium, is amended to read: ▬▬▬▬ ✓

_deleted_
_see unit #26_

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

SITRA 20 (6/90)

Endorsement No. _____15_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. _____W-141739_____                    Endorsement Effective _____JULY 1, 1991_____
                                                                        (12:01 A.M.)

                                    Countersigned _____
                                                              (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

DECLARATIONS AMENDATORY ENDORSEMENT

In consideration of an additional premium of ▮▮▮ this Policy is changed to provide:

ITEM 1 of the Declarations, Name and Address of Insured, is amended to include:  Oakley Groves, Inc., Etal

ITEM 5 of the Declarations, Insured's Retention Each Occurrence, is amended to read:  $400,000 for Oakley Groves, Inc., Etal

ITEM 6 of the Declarations, Business Operations of Insured, is amended to read:

| CLASSIFICATION OF OPERATIONS | ESTIMATED ANNUAL REMUNERATION | ESTIMATED MANUAL PREMIUM |
|---|---|---|
| All Operations See Endorsements 6 & 14 | ▮▮▮ | ▮▮▮ |

ITEM 7 of the Declarations is amended to read:

▮▮▮ % of Manual Premium
▮▮▮ % of Manual Premium for Oakley Groves, Inc., Etal

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-52 (8/90)

8/11/2010 11:17

"Revised"   Endorsement No._____ 10

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W - 141739 _____          Endorsement Effective _____ JANUARY 1, 1991 _____
                                                                        (12:01 A.M.)
                                             Countersigned _Dwight Polack_
                                                              (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

RENEWAL ENDORSEMENT

This Policy is changed to provide:

For the period January 1, 1991 to January 1, 1992, the following Declaration Items are amended as shown below:

ITEM 4   - Company's Limit of Indemnity Each Occurrence
           (a) For Workers Compensation:                          $ 20,000,000
           (b) For Employers Liability:                           $  1,000,000
           (c) For Workers Compensation & Employers Liability Combined:   $ 20,000,000

ITEM 5   - Insured's Retention Each Occurrence: $375,000

ITEM 6   - Business Operations of Insured    (a)   Estimated Annual Remuneration:   $ ▮▮▮▮▮▮
                                             (b)   Total Estimated Manual Premium:    ▮▮▮▮▮▮

ITEM 7   - Policy Premium: ▮▮▮▮▮▮          Advance Premium for this Policy:     ▮▮▮▮▮▮
           ▮▮ % of Manual Premium

ITEM 8   - Minimum Premium for this Policy: ▮▮▮▮▮▮

ITEM 9   - Additional Endorsements forming part of Policy at time of Renewal: WTA-32S, WTA-01

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-380 (11/90)

8/11/2010 11·17

Endorsement No. _____11_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. ____W-141789_____          Endorsement Effective ____JANUARY 1, 1991____
                                                                    (12:01 A.M.)

                                         Countersigned _____
                                                                (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

### ADVANCE PREMIUM INSTALLMENT ENDORSEMENT

This Policy is changed to provide:

ITEM 7 of the Declarations, Advance Premium for this Policy, will be payable as follows for the period January 1, 1991 to January 1, 1992:

| DUE DATE | AMOUNT PAYABLE |
|----------|----------------|
| January 1, 1991 | ███████ |
| July 1, 1991 | ███████ |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

Endorsement No. _____ 12 _____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED ____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. ____ W-141739 _____ ∙            Endorsement Effective ___ MARCH 2, 1991 _____
                                                                    (12:01 A.M.)

                                    Countersigned _____
                                                        (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

SPECIFIC AIRCRAFT COVERAGE ENDORSEMENT

This Policy is changed to provide:

In consideration of an additional premium of █████ as respects the Insured's liability for loss resulting from an occurrence during the contract period the Company will indemnify the Insured for loss sustained by any employee of the Insured while entering into, alighting from or riding in the aircraft specified below or their replacement which are owned by the Insured or operated by employees of the Insured.

AIRCRAFT

1979 Cessna Skywagon

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-15 (7/90)

8/11/2010 11:17

Endorsement No._____16_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____**FLORIDA HOTEL-MOTEL SELF INSURERS FUND**_____

Policy No. _____W-141739_____          Endorsement Effective_____**JULY 1, 1991**_____
                                                                    (12:01 A.M.)

                                        Countersigned_____*Kenneth E. B. Al*_____
                                                                (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

### ASSOCIATION ENDORSEMENT - ADDITIONAL ACCEPTABLE CODE

This Policy is changed to provide:

In accordance with Endorsement No. 6, **ASSOCIATION ENDORSEMENT**, Paragraph C, the following account is accepted for coverage under the indicated code(s):

| CODE | CLASSIFICATION | INSURED |
|------|----------------|---------|
| 0016 | Fruit Picking by Contractors | Oakley Groves, Inc., etal |
| 0050 | Grove Caretaking Operations by Contractors - Drivers | Oakley Groves, Inc., etal |
| 0082 | Orchard and Grove Owners and Operators- All Operations and Drivers | Oakley Groves, Inc., etal |
| 7219 | Trucking, NOC - & Drivers | Oakley Groves, Inc., etal |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-74 (9/90)

Endorsement No._____17_____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED ____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. ____W-141789_____                    Endorsement Effective ____JANUARY 1, 1991____
                                                                    (12:01 A.M.)

                                        Countersigned _____
                                                                (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

## AUDIT ADDITIONAL PREMIUM ENDORSEMENT

This Policy is changed to provide:

In consideration of an additional premium of ▮▮▮▮ it is understood and agreed that the following is the final premium adjustment for the period January 1, 1990 to January 1, 1991:

| | | |
|---|---|---|
| Actual Exposure(Earned Normal Premium) | $ ▮▮▮▮▮ | |
| Percent of Earned Normal Premium | ▮▮% | |
| Earned Premium | $ ▮▮▮▮ | |
| Less Advance Premium | $ ▮▮▮▮ | |
| Additional Premium | $ ▮▮▮ | |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-05 (7/90)

Endorsement No. _____ 13

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND

Policy No. _____ W-141739                    Endorsement Effective _____ MAY 17, 1991

                                             (12:01 A.M.)

                    Countersigned _____

                                             (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

This Policy is changed to provide:

In consideration of a return premium of ▮▮▮▮▮, Endorsement No. 12, SPECIFIC AIRCRAFT COVERAGE ENDORSEMENT, is excluded in its entirety.

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-33 (8/90)

Endorsement No. ___22___

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED ___ FLORIDA HOTEL-MOTEL SELF INSURERS FUND ___

Policy No. ___ W-141739 ___          Endorsement Effective ___ JUNE 1,1991 ___
                                                                    (12:01 A.M.)

                    Countersigned _____
                                              (Authorised Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

Endorsement No. 18 is deleted in its entirety and replaced with the following:

This Policy is changed to provide:

   In consideration of a return premium of ▮▮▮▮▮, Endorsement No. 12, SPECIFIC AIRCRAFT COVERAGE ENDORSEMENT, is excluded in its entirety.



This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-83 (8/90)

Endorsement No._____19_____

This endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this endorsement is issued subsequent to preparation of the Policy).

INSURED ____FLORIDA HOTEL-MOTEL SELF INSURERS FUND_____

Policy No. ____W - 141739____        Endorsement Effective _____JANUARY 1, 1992_____

                                                                                                      12:01 A.M.

                                Countersigned _____

                                                                        (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

---

RENEWAL ENDORSEMENT                                                    '92

This Policy is changed to provide:

For the period January 1, 1992 to January 1, 1993, the following Declaration items are amended as shown below:

ITEM 4  - Company's Limit of Indemnity Each Occurrence
                (a) For Workers Compensation:                          Statutory
                (b) For Employers Liability:                          $  1,000,000

ITEM 5  - Insured's Retention Each Occurrence: $375,000

ITEM 6  - Business Operations of Insured      (a)    Estimated Annual Remuneration:      $  ▮▮▮▮
                                              (b)    Total Estimated Earned Normal Premium:  ▮▮▮▮

ITEM 7  - Policy Premium: ▮▮▮▮            Advance Premium for this Policy:        ▮▮▮▮
            ▮▮ % of Earned Normal Premium - See Endorsement #21

ITEM 8  - Minimum Premium for this Policy: ▮▮▮▮

ITEM 9  - Additional Endorsements forming part of Policy at time of Renewal: WTA-32S, WTA-01, WTA-82

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-32S (11/89)

Endorsement No. _____ 20 _____

This Endorsement forms a part of the Policy to which attached, effective on the inception date of the Policy unless otherwise stated herein. (The following information is required only when this Endorsement is issued subsequent to preparation of the Policy).

INSURED _____ FLORIDA HOTEL-MOTEL SELF INSURERS FUND _____

Policy No. _____ W-141739 _____          Endorsement Effective _____ JANUARY 1, 1992 _____
                                                                    (12:01 A.M.)

                              Countersigned _____
                                                        (Authorized Representative)

by TRANSAMERICA INSURANCE COMPANY, Woodland Hills, California

_____

ADVANCE PREMIUM INSTALLMENT ENDORSEMENT

This Policy is changed to provide:

ITEM 7 of the Declarations, Advance Premium for this Policy, will be payable as follows for the period January 1, 1992 to January 1, 1993:

| DUE DATE | AMOUNT PAYABLE |
|---|---|
| January 1, 1992 | ██████ |
| July 1, 1992 | ██████ |

This Endorsement will not vary, alter or extend any agreement, provision, condition or declaration of the Policy other than as stated above.

WTA-01 (7/90)

# SPECIFIC EXCESS WORKERS COMPENSATION
# AND EMPLOYERS LIABILITY POLICY

In consideration of the payment of the premium, in reliance upon the statements in this Declarations made part of this Policy and subject to its terms, the Company named in the Declarations agrees with the Insured also named in the Declarations (herein called the Insured) as follows:

## PART 1. COVERAGE

**Self-Insured Indemnity Coverage.** The Company will indemnify the Insured for loss resulting from an occurrence during the contract period provided either:

(1) such loss would be covered under the Insured's qualified self-insured retention plan in those states named in Item 3 of the Declarations or;

(2) such loss would be compensable under the Workers Compensation Act of any state for employees injured who are normally employed in a state named in Item 3 of the Declarations and then only for that portion of loss, not exceeding the benefits in the state in which the injured employees are normally employed.

However, if the Insured is subject to the Workers Compensation Act when not a duly qualified self-insurer for a loss that would otherwise be covered by this Agreement, the Company will indemnify the Insured for such loss not exceeding the amount which would have been paid had the Insured been a duly qualified self-insurer.

**Employers Liability Indemnity Coverage.** The Company will indemnify the Insured for loss resulting from an occurrence during the contract period on account of the Insured's liability for damages because of bodily injury or occupational disease sustained by employees normally employed in a state named in Item 3 of the Declarations. This Agreement shall not indemnify the Insured for loss:

(1) for any amount exceeding that which the Insured would have sustained had the Insured not rejected the Workers Compensation Act of any state named in Item 3 of the Declarations, or any part of such act, or

(2) resulting from damages imposed in any lawsuit brought in, or any judgement rendered by any court outside the United States of America, its territories or possessions, or Canada, or to any action on such judgements, wherever brought.

## PART 2. RETENTION AND LIMIT OF INDEMNITY

No indemnity shall be afforded under this Policy, unless and until the Insured shall first have sustained loss as a result of each occurrence in excess of the amount of the Retention stated in Item 5 for the types of coverage involved of the Declarations. The Company hereby agrees to indemnify the Insured against loss as a result of each occurrence in excess of such Retention, subject to

the Limit of Indemnity provided for in Item 4 for the types of coverage involved of the Declarations.

The Company shall indemnify the Insured for claim expenses for loss in excess of the Retention in the same proportion as the amount of the loss paid by the Company in excess of the Retention bears to the total amount of such loss.

## PART 3. EXCLUSIONS

This Policy shall not apply to:

(A) punitive or exemplary damages, fines or penalties assessed against or imposed upon the Insured:

(1) on account of bodily injury or occupational disease sustained by any employee; or

(2) because of the conduct of the Insured or any of its agents (a) in the investigation, trial or settlement of any claim for which coverage is afforded under Part 1 of the Agreement, or b) in failing to pay or delaying the payment of any such benefits or damages; or

(3) on account of violation of any statute or regulation;

(B) loss arising out of any operation with respect to which the Insured carries primary workers compensation or Employers Liability insurance coverage;

(C) under Employers Liability Indemnity Coverage in Part 1 of this Policy,

(1) liability assumed by the Insured under any contract or agreement, or

(2) any obligation for which the Insured or any carrier as his Insurer may be held liable for any Workers Compensation, Unemployment Compensation or Disability benefits law, or under any similar law.

## PART 4. DEFINITIONS

**DEFINITIONS: THE TERM:**

(a) "bodily injury" shall include death resulting therefrom, but shall not include occupational disease;

(b) "claim expense" shall mean court costs, interest upon awards and judgements, and investigation, adjustment and legal expenses that are actually paid by the Insured as respects loss. However, the term "claim expenses" shall not include loss, salaries paid to employees of the Insured nor shall it include fees and retainers paid to the Insured's service organization;

(c) "employee" shall mean, any person performing work which renders the Insured liable under the Workers Compensation Act of a state named in Item 3 of the Declarations, or under the common law of any such state,

(d) "Insured's service organization" shall mean an agent of the Insured paid to service or administer the Insured's self-insured workers compensation and/or employers liability program,

(e) "loss" shall mean only such amounts as are actually paid by the Insured in payment of benefits under the applicable Workers Compensation Act, (or in settlement of its Employers Liability insured hereunder) in settlement of claims, or in satisfaction of awards or judgements  However, the term "loss" shall not include court costs, interest upon awards or judgement, investigation, adjustment and legal expenses, salaries paid to employees of the Insured, nor fees and retainers paid to the Insured's service organization,

(f) "occupational disease" shall include   (1) death resulting therefrom  (2) and cumulative injuries,

(g) "occurrence", as applied to bodily injury, shall mean "accident". Occupational disease sustained by each employee shall be deemed to be a separate occurrence and occurrence shall be deemed to take place on the date upon which the employee is last exposed at work to conditions allegedly causing such occupational disease,

(h) "remuneration" shall mean payroll developed in accordance with the rules set forth in the applicable Manual of Workers Compensation and Employers Liability Insurance,

(i) "standard premium" shall mean the premium computed by applying the agreed rates specified in Item 6 of the Declarations to the remuneration applicable in the states named in Item 3 of the Declarations,

(j) "state" shall mean any state of the United States of America and the District of Columbia,

(k) "statutory" shall mean loss in excess of any retention applicable to this Agreement,

(l) "Workers Compensation Act" shall include any separate occupational disease act, but shall not include the non-occupational disability benefit provisions of any such act

PART 5   CONTRACT PERIODS

The term "normal contract period" shall mean the period of time between 12 01 AM on the effective date of this Policy, and 12-01 AM on the expiration date, as specified in the Declarations

TAW - 03 (1/89)

The term "fractional contract period" applies only in case this Policy is cancelled effective at a date other than the end of the normal contract period, and shall mean that period of time between 12 01 AM on the effective date of this Agreement and 12 01 AM on the cancellation date of this Policy

PART 6   POLICY PREMIUM

As of the effective date stated in Item 2 of the Declarations, the Insured shall pay to the Company the Advance Premium specified in Item 7 of the Declarations, which Advance Premium shall be held for the Insured's account and shall be allowed as a credit against earned Policy Premium for the contract period

Within 45 days after the end of the contract period, the Insured shall render to Wexford Underwriting Managers, Inc , a payroll report upon a form satisfactory to Wexford Underwriting Managers, Inc , showing by classification the amount of remuneration earned by employees during the contract period, plus computations of the standard premium and the earned Policy Premium for the contract period (the latter obtained by adjusting Policy Premium as specified in Item 7 of the Declarations)

The Insured shall pay to the Company the excess, if any, of the earned Policy Premium over the Advance Premium paid at the beginning of the contract period   If such Advance Premium exceeds such earned Policy Premium, the Company shall return to the Insured the amount of such excess, subject to the Minimum Premium applicable to the normal contract period, as specified in Item 8 of the Declarations

In no event, however, shall the Policy Premium due the Company, in respect to the normal contract period be less than the applicable Minimum Premium specified in Item 8 of the Declarations   The Policy Premium due the Company in respect of the fractional contract period resulting in case this Policy is cancelled effective at a date other than the end of a normal contract period shall be set forth in Part 14 of the Policy, Cancellation

PART 7   ADMINISTRATION AND REPORTING OF CLAIMS

The Insured shall be responsible for the investigation, settlement, defense or appeal of any claim made or suit brought, or proceeding instituted against the Insured and shall give immediate notice to Wexford Underwriting Managers, Inc , upon learning of any of the following

(a) any claim, suit or proceeding that appears to involve indemnity by the Company,

(b) any occurrence, claim, award or proceeding judgement which exceeds 50% of the Retention stated in Item 5 of the Declarations,

(c) any occurrence which causes serious injury to two or more employees,

(d) any case involving:

(1) amputation of a major extremity;

(2) brain or spinal cord injury;

(3) death;

(4) disability for a period of nine months or more;

(5) permanent total disability as defined in the Workers Compensation Act of the applicable state named in Item 3 of the Declarations;

(6) any second or third degree burn of 25% or more of the body.

(e) the reopening of any case in which further award might involve liability of the Company.

The Insured shall make no voluntary settlement involving loss to the Company except with written consent of Wexford Underwriting Managers, Inc.

The Insured shall forward promptly to Wexford Underwriting Managers, Inc., any information it may request on the individual occurrences, claims or cases. The Insured shall render to Wexford Underwriting Managers, Inc., within 45 days of the end of the contract period an experience report, upon a form satisfactory to Wexford Underwriting Managers, Inc., showing in detail the amounts disbursed during the contract period in settling claims and the estimated future payments on, or reserves for, outstanding claims.

The Company, at its own election and expense and in addition to any indemnity for claim expenses provided by this Policy, shall have the right but not the duty to participate with the Insured in, or to assume in the name of the Insured control over, the investigation, settlement, defense or appeal of any claim, suit or proceeding which might involve liability of the Company.

PART 8.  LOSS PAYABLE

The company will indemnify the Insured for any loss for which it may be liable under this policy as follows:

(a) As respects PART 1, Coverage, Self Insurers Indemnity Coverage, payment shall first be made by the Insured for all benefits required of the Insured under Workers Compensation Law and the Company shall reimburse the Insured at monthly intervals after the Company has received proofs of payment by the Insured. Workers Compensation awards that may involve the Company may not be settled on a lump sum basis without prior written consent of the Company.

(b) As respects PART 1, Coverage, Employers Liability Indemnity Coverage, payment shall first be made by the Insured for damages for which the Insured is legally liable.  The Company will reimburse the Insured within 30 days after the Insurer has received proof of payment by the Insured.

TAW - 02 (1/89)

PART 9.  SUBROGATION AND SALVAGE

The Insured shall prosecute any and all claims it may have against any person, firm or corporation arising out of any occurrence resulting in the payment of loss and claim expenses. All recoveries therefrom shall be applied to reduce the loss and claim expenses to which this Policy applies, after deducting from such recoveries the expenses incurred in effecting such recoveries.  If the Company shall have sustained a loss or claim expenses on account of such occurrence, such net amount of the recovery as does not exceed the Company's loss and claim expenses shall be paid to the Company.

If the Insured has such a claim against any person, firm or corporation, which it fails or neglects to pursue or enforce within the reasonable time, the Company shall be subrogated to such claim and the Insured shall execute any and all papers and documents necessary to vest full right, title and interest in the claim in the Company.  The Company may prosecute the claim in its own name or in the name of the Insured.  The Insured shall cooperate to the fullest extent with the Company in the enforcement of any such claim.  The net proceeds derived from such claim shall first be used by the Company to pay its loss and claim expenses, and any excess shall be paid to the Insured.

PART 10.  AUDIT AND INSPECTION

The books and records of the Insured and the books and records of all agents and representatives of the Insured (including the Insured's service organization), as far as they relate to the subject matter of this Policy, shall be open to the Company and its representatives at all times during the usual business hours of the Insured and within three years after the contract period ends or within three years after the final settlement of all claims or payments made under this Policy.

The Company shall be permitted, but not obligated to inspect the Insured's properties, operations or workplaces at any time. Neither the Company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking on behalf of or for the benefit of the Insured or others, to determine or warrant that such properties, operations or workplaces are safe, or healthful, or are in compliance with any code, law, rule or regulation.

PART 11.  OTHER INSURANCE

If any other excess insurance, reinsurance or indemnity exists protecting against loss or claim expenses covered by this Policy, the indemnity afforded by this Policy shall apply in excess of such other excess insurance, reinsurance or indemnity unless such other insurance, reinsurance or indemnity shall be arranged specifically to apply only in excess of this Policy.

**PART 12. ASSIGNMENT**

No assignment of the Insured's interest hereunder shall be binding upon the Company.

**PART 13. NOTICE OR PAYMENT**

If more than one entity is named in Item 1 of the Declarations, notices, stipulations and payments to or by the entity first named in Item 1 shall be binding upon all other entities named therein.

**PART 14. CHANGE OR WAIVER**

The terms of this Policy shall not be waived or changed except by endorsement issued to form a part hereof, signed by a duly authorized representative of the Company.

**PART 15. CANCELLATION**

Either the Company or the Insured may cancel this Policy at any time by giving written notice by registered mail to the other party. Such notice shall provide at least the number of days cancellation notice set forth in Item 2 of the Declarations, stating when cancellation shall be effective. However, if cancellation notice is not set forth in Item 2 of the Declarations, cancellation notice shall not be less than 30 days or such greater time as may be required by state law. This Policy does not apply to loss and claim expenses as a result of occurrences taking place after the effective date of such cancellation.

This policy may also be cancelled by the Company for non-payment of any unpaid portion of the premium by giving written notice by registered mail to the Insured at the address shown in Item 1 of the Declarations, stating when, but not less than 10 days thereafter cancellation shall be effective.

If this Policy is cancelled prior to the expiration date stated in the Declarations, the Policy Premium for the fractional contract period shall be computed following the procedure set forth in Part 6 of this Policy, Policy Premium, except;

(a) If such cancellation is at the request of the Company, or at the request of the Insured when actually retiring from the business described in the application and specified in the Declarations, the Policy Premium shall be either the earned Policy Premium obtained by applying the adjustment specified in Item 7 of the Declarations to the standard premium for such fractional contract period, or the pro rata portion of the Minimum Premium for the normal contract period, as specified in Item 8 of the Declarations, whichever is greater;

(b) If such cancellation is at the request of the Insured, when not retiring as provided for above, the Policy Premium shall be either the earned Policy Premium obtained by applying the rates specified in Item 7 of the Declarations of the adjusted standard

TAW - 02 (1/89)

premium for such fractional contract period and further adjusted in accordance with the customary short rate table and procedure or the short rate portion of the Minimum Premium for the normal contract period, as specified in Item 8 of the Declarations, whichever is greater.

Tender of earned or unearned Policy Premium by either party to this Policy shall not constitute a condition precedent to the effectiveness of cancellation as herein provided.

**PART 16. ACCEPTANCE**

By acceptance of this Policy the Insured agrees that the statements in the Declarations are the Insured's agreements and representations; that this Policy embodies all agreements existing between the Insured and the Company or any of its agents relating to this Policy; and that full compliance by the Insured with all the terms of this Policy is a condition precedent to the Company's liability hereunder.

In Witness Whereof, the Company has caused this Policy to be signed by its President and Secretary, but the Policy shall not be binding upon the Company unless the attached Declarations bearing the Policy Number is countersigned by a duly authorized representative of the Company.

Transamerica Insurance Company

_____
President

_____
Secretary

Filing # 21133303 Electronically Filed 12/02/2014 02:17:51 PM

## FORM 1.997. CIVIL COVER SHEET

The civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form shall be filed by the plaintiff or petitioner for the use of the Clerk of the Court for the purpose of reporting judicial workload data pursuant to Florida Statues section 25.075.

### I.      CASE STYLE

IN THE CIRCUIT COURT OF THE <u>FOURTH</u> JUDICIAL CIRCUIT,
IN AND FOR <u>DUVAL</u> COUNTY, FLORIDA

Case No.:_____
Judge: _____

<u>FHM Insurance Company</u>
Plaintiff
        vs.
 <u>Transamerica Insurance Company</u>
Defendant

### II.      TYPE OF CASE

☐ Condominium
☒ Contracts and indebtedness
☐ Eminent domain
☐ Auto negligence
☐ Negligence – other
   ☐ Business governance
   ☐ Business torts
   ☐ Environmental/Toxic tort
   ☐ Third party indemnification
   ☐ Construction defect
   ☐ Mass tort
   ☐ Negligent security
   ☐ Nursing home negligence
   ☐ Premises liability – commercial
   ☐ Premises liability – residential
☐ Products liability
☐ Real Property/Mortgage foreclosure
   ☐ Commercial foreclosure $0 - $50,000
   ☐ Commercial foreclosure $50,001 - $249,999
   ☐ Commercial foreclosure $250,000 or more
   ☐ Homestead residential foreclosure $0 – 50,000
   ☐ Homestead residential foreclosure $50,001 - $249,999
   ☐ Homestead residential foreclosure $250,000 or more
   ☐ Non-homestead residential foreclosure $0 - $50,000
   ☐ Non-homestead residential foreclosure $50,001 - $249,999
   ☐ Non-homestead residential foreclosure $250,00 or more
   ☐ Other real property actions $0 - $50,000

☐ Other real property actions $50,001 - $249,999
☐ Other real property actions $250,000 or more

☐ Professional malpractice
   ☐ Malpractice – business
   ☐ Malpractice – medical
   ☐ Malpractice – other professional
☐ Other
   ☐ Antitrust/Trade Regulation
   ☐ Business Transaction
   ☐ Circuit Civil - Not Applicable
   ☐ Constitutional challenge-statute or ordinance
   ☐ Constitutional challenge-proposed amendment
   ☐ Corporate Trusts
   ☐ Discrimination-employment or other
   ☐ Insurance claims
   ☐ Intellectual property
   ☐ Libel/Slander
   ☐ Shareholder derivative action
   ☐ Securities litigation
   ☐ Trade secrets
   ☐ Trust litigation

**COMPLEX BUSINESS COURT**

This action is appropriate for assignment to Complex Business Court as delineated and mandated by the Administrative Order.  Yes ☐ No ☒

III.   **REMEDIES SOUGHT** (check all that apply):
- ☒ Monetary;
- ☐ Non-monetary
- ☒ Non-monetary declaratory or injunctive relief;
- ☐ Punitive

IV.   **NUMBER OF CAUSES OF ACTION:** (     )
(Specify)

<u>2</u>

V.   **IS THIS CASE A CLASS ACTION LAWSUIT?**
- ☐ Yes
- ☒ No

VI.   **HAS NOTICE OF ANY KNOWN RELATED CASE BEEN FILED?**
- ☒ No
- ☐ Yes – If "yes" list all related cases by name, case number and court:

VII.   **IS JURY TRIAL DEMANDED IN COMPLAINT?**
- ☒ Yes
- ☐ No

---

I CERTIFY that the information I have provided in this cover sheet is accurate to the best of my knowledge and belief.

Signature <u>s/ Frederick D. Page</u>                              FL Bar No.:  <u>968587</u>
          Attorney or party                                                  (Bar number, if attorney)

<u>Frederick D. Page</u>                                          <u>12/02/2014</u>
(Type or print name)                                           Date

16-2014-CA-008328-XXXX-MA

Filing # 21133303 Electronically Filed 12/02/2014 02:17:51 PM

CV-A

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NUMBER:

DIVISION:

FHM INSURANCE COMPANY, a Florida
corporation,

      Plaintiff,

v.

TRANSAMERICA INSURANCE COMPANY,
a foreign corporation,

      Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of the State:

    YOU ARE HEREBY COMMANDED to serve this summons and a copy of the complaint, or petition in the above styled cause upon the defendant(s):

        Transamerica Insurance Company
        c/o Chief Financial Officer, its Registered Agent
        200 East Gaines Street
        Tallahassee, Florida  32399-0000

    Each defendant is hereby required to serve written defenses to said complaint or petition on plaintiff's attorney, whose name and address is:

        Frederick D. Page
        Holland & Knight LLP
        50 North Laura Street, Suite 3900
        Jacksonville, Florida 32202

within 20 days after service of this summons upon that defendant, exclusive of the day of service, and to file the original of said written defenses with the clerk of said court either before

service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

Individuals with disabilities needing a reasonable accommodation to participate in this proceeding should contact ADA Coordinator, 330 East Bay Street, Duval County Courthouse, Room 220, Jacksonville, Florida 32202 no later than seven (7) days prior to the proceeding at (904) 630-2564. If this notice to the individual of a deposition, court date, subpoena, etc., is less than seven (7) days, then the individual should contact Frederick D. Page as soon as possible after receiving that notice. Telephone: (904) 353-2000; or if hearing impaired, 1-800-955-8771 (TDD); or 1-800-955-8770 (v), via Florida Relay Service.

WITNESS my hand and seal of said Court on   Dec 03 2014   .

RONNIE FUSSELL
Clerk of Said Court

By: J. Chaueis

As Deputy Clerk

(Court Seal)

2

 **CT Corporation**

**Service of Process Transmittal**
01/22/2015
CT Log Number 526432699

TO: Sherryl R. Scott, Deputy General Counsel
RiverStone Resources LLC
250 Commercial St Ste 5000
Manchester, NH 03101-1116

RE: **Process Served in Florida**

FOR: TIG Insurance Company (Domestic State: CA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | FHA Insurance Company, etc., Pltf. vs. TIG Insurance Company, etc., Dft. |
| **DOCUMENT(S) SERVED:** | Notice(s), Summons, Amended Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Duval County Circuit Court, FL, Case # 162014CA8328DIVCVA |
| **NATURE OF ACTION:** | Insurance Litigation - Policy benefits claimed |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Plantation, FL |
| **DATE AND HOUR OF SERVICE:** | By Electronic Receipt on 01/22/2015 |
| **JURISDICTION SERVED :** | Florida |
| **APPEARANCE OR ANSWER DUE:** | Within 20 days after service of this summons upon you |
| **ATTORNEY(S) / SENDER(S):** | Frederick D. Page<br>Holland B. Knight LLP<br>50 N. Laura Street<br>Suite 3900<br>Jacksonville, FL 32202<br>904-353-2000 |
| **REMARKS:** | Process received by Chief Financial Officer on 01/20/2015, and forwarded to C T Corporation System by electronic delivery on 01/22/2015. |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 01/22/2015, Expected Purge Date: 01/27/2015<br>Image SOP<br>Email Notification, Jennifer Lemire Jennifer_lemire@trg.com<br>Email Notification, Sherryl R. Scott Sherryl_Scott@trg.com<br>Email Notification, Lisa Akerman lisa_akerman@trg.com<br>Email Notification, Linda Racette Linda_Racette@trg.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 1200 South Pine Island Road<br>Plantation, FL 33324 |
| **TELEPHONE:** | 954-473-5503 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.



CHIEF FINANCIAL OFFICER
**JEFF ATWATER**
STATE OF FLORIDA



15-006133

| | |
|---|---|
| FHM INSURANCE COMPANY, A<br>FLORIDA CORPORATION | **CASE #:**   **16-2014-CA-8328 DIV-CV-A**<br>**COURT:**   **CIRCUIT COURT**<br>**COUNTY:**  **DUVAL**<br>**DFS-SOP#: 15-006133** |

PLAINTIFF(S),

VS.

TIG INSURANCE COMPANY F/K/A
TRANSAMERICA INSURANCE COMPANY

DEFENDANT(S).

_____/

SUMMONS, AMENDED COMPLAINT, EXHIBIT

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial
Officer of the State of Florida.  Said process was received in my office by MAIL on the 20th day
of January, 2015 and a copy was forwarded by Electronic Delivery on the 22nd day of January,
2015 to the designated agent for the named entity as shown below.

TIG INSURANCE COMPANY
DONNA MOCH
CT CORPORATION SYSTEM
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324

\* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

*Jeff Atwater*

Jeff Atwater
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

FREDERICK D. PAGE
SUITE 3900                                                                                  CYA
50 NORTH LAURA STREET
JACKSONVILLE FL 32202

Filing # 22320684 E-Filed 01/08/2015 01:31:49 PM

IN THE CIRCUIT COURT, FOURTH
JUDICIAL CIRCUIT, IN AND FOR
DUVAL COUNTY, FLORIDA

CASE NUMBER:   16-2014-CA-8328

DIVISION:        CV-A

FHM INSURANCE COMPANY, a Florida
corporation,

       Plaintiff,

v.

TIG INSURANCE COMPANY, f/k/a
TRANSAMERICA INSURANCE
COMPANY, a foreign corporation,

       Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA:

To Each Sheriff of the State:

    YOU ARE HEREBY COMMANDED to serve this summons and a copy of the
complaint, or petition in the above styled cause upon the defendant(s):

        TIG Insurance Company f/k/a Transamerica Insurance Company
        c/o Chief Financial Officer, its Registered Agent
        200 East Gaines Street
        Tallahassee, Florida  32399-0000

    Each defendant is hereby required to serve written defenses to said complaint or petition
on plaintiff's attorney, whose name and address is:

        Frederick D. Page
        Holland & Knight LLP
        50 North Laura Street, Suite 3900
        Jacksonville, Florida 32202

within 20 days after service of this summons upon that defendant, exclusive of the day of service, and to file the original of said written defenses with the clerk of said court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint or petition.

Individuals with disabilities needing a reasonable accommodation to participate in this proceeding should contact ADA Coordinator, 330 East Bay Street, Duval County Courthouse, Room 220, Jacksonville, Florida 32202 no later than seven (7) days prior to the proceeding at (904) 630-2564. If this notice to the individual of a deposition, court date, subpoena, etc., is less than seven (7) days, then the individual should contact Frederick D. Page as soon as possible after receiving that notice. Telephone: (904) 353-2000; or if hearing impaired, 1-800-955-8771 (TDD); or 1-800-955-8770 (v), via Florida Relay Service.

WITNESS my hand and seal of said Court on ___Jan 15 2015___.

RONNIE FUSSELL
Clerk of Said Court

By: _mc S. Thede_____

As Deputy Clerk

(Court Seal)

2

Filing # 23967670 E-Filed 02/19/2015 02:38:24 PM

IN THE CIRCUIT COURT
FOURTH JUDICIAL CIRCUIT IN AND FOR
DUVAL COUNTY, FLORIDA

FHM INSURANCE COMPANY, a
Florida corporation,

     Plaintiff,

v.                            Case No. 16-2014-CA-3828
                                   Division CV-A

TIG INSURANCE COMPANY, f/k/a
TRANSAMERICA INSURANCE
COMPANY, a foreign corporation,

     Defendant.
_____/

## NOTICE OF APPEARANCE

     PLEASE TAKE NOTICE that the undersigned law firm enters its appearance as counsel

for the Defendant, TIG Insurance Company, f/k/a Transamerica Insurance Company, and

requests that copies of all notices, pleadings and proceedings hereafter filed be served upon it.

All objections to service of process, jurisdiction, and venue are reserved.

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on February 19, 2015, a true and correct copy of the foregoing
has been filed with E-Portal and that E-Portal, via e-mail, will furnish a true and correct copy of
the foregoing to the following:

Frederick D. Page, Esquire
Holland & Knight, LLP
50 North Laura Street, Suite 3900
Jacksonville, Florida 32202
fpage@hklaw.com
Attorney for Plaintiff

                             /s/Brian W. Bennett_____
                             Brian W. Bennett, Esquire
                             Florida Bar No. 0104256
                             Primary: bbennett@floridalawonline.com
                             Secondary: bdillon@floridalawonline.com

PAGE, EICHENBLATT & BENNETT, P.A.
214 East Lucerne Circle
Orlando, Florida  32801
407-386-1900
407-209-1006 (fax)
Attorneys for Defendant

State of Florida    )
                   ) ss
County of Duval    )

## AFFIDAVIT OF BRYCE LARRABEE

Bryce Larrabee, being first duly sworn, deposes and states:

1.    That I am an Associate General Counsel for RiverStone Claims Management, Inc, as well as Assistant Vice President of TIG Insurance Company and that I make this affidavit based upon personal knowledge and would be competent to testify to the matters contained herein if so called;

2.    That in my positions as Associate General Counsel and Assistant Vice President, I am responsible for managing litigation against TIG Insurance Company;

3.    That as part of my responsibilities for handling claims against TIG Insurance Company, I am familiar with its corporate structure;

4.    That TIG Insurance Company is a corporation organized and existing under the laws of the State of California;

5.    That TIG Insurance Company's principle place of business is located in Manchester, New Hampshire.

Further affiant sayeth naught.

_____
Bryce Larrabee

SUBSCRIBED AND SWORN to
Before me this 19 day of February, 2015.

_____
Notary Public

JENNIFER L. LEMIRE
NOTARY PUBLIC
STATE OF NEW HAMPSHIRE
My Commission Expires December 8, 2015

EXHIBIT D